EVERSMEYER *v.* McCOLLUM.

Opinion delivered May 17, 1926.

1. DEEDS—APPLICATION OF RULE IN SHELLEY'S CASE.—The rule in Shelley's Case is applicable only when the language used in the conveyance creates a limitation to the heirs in general of the grantor.

2. REMAINDERS—APPLICATION OF RULE IN SHELLEY'S CASE.—Under a conveyance to A and her husband for their natural lives with remainder over to her children, the rule in Shelley's Case has no application, and the deed conveyed only a life estate to A and her husband, with remainder to her children.

3. REMAINDERS—WHEN CONTINGENT.—Where land was conveyed to A and her husband for their natural lives and at their death to A's children or descendants, and, if none such be in existence at their death, to a named child of the husband by a former marriage, *held* that during A's lifetime her child was a contingent remainderman, to whom no title passed.

4.  REMAINDERS—RIGHTS OF CONTINGENT REMAINDERMAN.—Grantees
    of a contingent remainderman may bring an action to prevent
    waste of the remainder estate, but not to quiet title in them-
    selves subject to the estate of the life tenant.

Appeal from Hempstead Chancery Court; *C. E.
Johnson*, Chancellor; reversed in part.

STATEMENT OF THE FACTS.

James H. McCollum brought this suit in equity
against P. F. Hein, W. M. Kennedy, J. B. Yates, D. R.
Hammet and A. G. Guise, to enjoin them from cutting
timber on the lands embraced in the complaint, and to
declare that the plaintiff's title to said land may be con-
firmed and quieted forever, subject to the life estate of
the defendant P. F. Hein; that an oil and gas lease exe-
cuted by P. F. Hein to J. B. Yates be canceled, and that
the plaintiff have a decree against the defendants for
the value of all the crossties made by them of the timber
which they had cut on said land.

P. F. Hein filed a separate answer in which he
asserted title to the land embraced in his complaint, and
filed a cross complaint against the plaintiff and A. H.
Eversmeyer and Hattie Eversmeyer, his wife, and Dr.
W. B. H. Pool and Jessie G. B. Pool, his wife, and asked
that they be made defendants to the action.

In the event it was decreed that P. F. Hein only
owned a life estate in 220 acres of land to which he
asserted title, and which is described in the complaint,
during the life of Mary Pool, he asked to recover against
A. H. Eversmeyer, from whom he had a warranty deed
to said land, the sum of $8,800 on account of failure of
his title.

The suit involves the construction of a deed from
T. R. Billingsley and wife to Mary Pool and others, exe-
cuted on the 18th day of July, 1910. Omitting the
description of the land, the body of the deed is as
follows:

"That T. R. Billingsley and wife, Lou Billingsley,
of Hempstead County, Arkansas, for and in considera-
tion of the sum of forty-five hundred dollars ($4,500), the

receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey unto Mary A. Pool for and during her natural life, and at her death to Philander Pool, if alive, for and during his natural life, and at his, Philander's, death, the said Mary A. Pool being dead, if there should be a child or children born of the said Mary Pool or descendants, and if none such be in existence on the death of Philander Pool, then said land shall go to and become the property of Nannie L. Mason (formerly Nannie L. Pool), the following lands lying in the county of Hempstead and State of Arkansas, to-wit:

"To have and to hold the same unto the said Mary A. Pool for and during her natural life, and at her death to Philander Pool, if alive, for and during his natural life, and at his, Philander's, death, the said Mary A. Pool being dead, if there should be a child or children born to the said Mary Pool or descendants of such child or children, the land herein described shall go to such child or children or their descendants, and, if none such be in existence on the death of Philander Pool, then said land shall go to and become the property of Nannie L. Mason (formerly Nannie L. Pool), with all appurtenances thereunto belonging."

The record shows that on February 22, 1910, Philander Pool, Mary Pool, his wife, William B. H. Pool and Nannie L. Mason and her husband J. A. Mason filed an *ex parte* petition in the Henderson Circuit Court for the purpose of having sold 176 acres of land situated in Henderson County, Kentucky.

The petition alleges that William B. H. Pool, who is 27 years of age, is the child of Mary Pool, and the only child born to her now living. Philander Pool is alleged to be 69 years and Mary Pool 66 years of age. The petition further alleges that Philander Pool resides in McCracken County, Kentucky, and that William B. H. Pool resides in the State of Arkansas, and that Nannie L. Mason resides in Union County, Kentucky. The reason given for selling the land is its inconvenient location to the home of the petitioners and the infirm condition of

Philander Pool and Mary Pool. The petitioners ask that the proceeds of sale, after paying the costs, be paid in the following manner: One-third to Philander Pool and the remainder of the proceeds to be reinvested by the court in other real estate with the title thereto in the same manner and as provided by the conditions and provisions of the deed of B. H. Hendrick and wife to Philander Pool and others. The deed of B. H. Hendrick and wife was executed on the 11th day of September, 1889, and contains the following:

"One-third to Philander Pool and the other two-thirds to his wife, Mary Pool, for and during her natural life, and at her death to go to Philander Pool, if alive, for and during his natural life, and if at his, Philander's, death, the said Mary Pool being dead, there should be living a child or children born of the said Mary Pool, or descendants of such child or children, said land shall go to such child or children, or their descendants, and, if none such be in existence at the death of said Philander Pool, then said balance of two-thirds of said land shall go to and become the property of Nannie L. Pool and her heirs forever."

On June 4, 1910, the same petitioners filed in the same court a supplemental petition with which was submitted the written proposition of T. R. Billingsley of Hempstead County, Arkansas, to sell and convey to them for a consideration of $4,500, 220 acres of land in Hempstead County, Arkansas, which is described in said supplemental petition, and which is the land in controversy in this suit.

The prayer of the petition was granted by said Henderson Circuit Court, and the sum of $4,500 of the remaining two-thirds of the proceeds of the sale of the land in Henderson County, Kentucky, was ordered by said Henderson Circuit Court to be invested in said Hempstead County, Arkansas, lands.

The commissioner was ordered and directed to pay said sum of $4,500 to said T. R. Billingsley upon the delivery of a warranty deed conveying said land to said

petitioners. In the order with reference to the vesting of the title to said Hempstead County land in the petitioners the following language is used:

"Said deed is to vest in the petitioners the same title in said land and by the same conditions and terms as the two-thirds interest was vested in them in the conveyance filed in this cause—that is, to Mary A. Pool, for and during her natural life, and at her death to the said Philander Pool, if alive, for and during his natural life, and at his, Philander's, death, the said Mary Pool being dead, [if] there should be a child or children born of the said Mary Pool, or descendants of such child or children, said land shall go to such child or children or their descendants, and if none such be in existence on the death of Philander Pool, then said two-thirds of said land shall go to and become the property of Nannie L. Pool (now Nannie L. Mason) and her heirs forever."

Pursuant to this order the deed of T. R. Billingsley and wife as copied above was executed.

On September 20, 1915, Mary Pool instituted an action in the chancery court of Hempstead County, Arkansas, against T. R. Billingsley, Philander Pool, Nannie L. Mason and William B. H. Pool, to reform the deed above referred to from T. R. Billingsley so as to vest the title in fee simple in said Mary Pool. In her petition Mary Pool alleges that William B. H. Pool was only her foster son.

William B. H. Pool filed an answer in which he denied all the allegations of the petition, and alleged the truth to be that he was the lawful son of Mary Pool and her husband, Philander Pool.

The court found from the evidence that there was no equity in the complaint of Mary Pool, and it was decreed that it should be dismissed for want of equity. No appeal was taken from this decree.

On the 8th day of April, 1918, Philander Pool and Mary Pool, his wife, for the consideration of $2,500 paid by A. H. Eversmeyer, conveyed to him by warranty deed

the 220 acres of land involved in this suit. This deed was duly filed for record on April 16, 1919.

On the 6th day of November, 1919, A..H. Eversmeyer and Hattie Eversmeyer, his wife, for the consideration of $1,000 paid by P. F. Hein, conveyed to him by warranty deed the 220 acres of land involved in this suit. This deed was duly filed for record on the 16th day of February, 1920. On the 5th day of November, 1919, Nannie L. Mason, who was the daughter of Philander Pool by a former wife, executed a quitclaim deed to Mary Pool to the 220 acres of land involved in this action. This deed was duly filed for record on the 16th day of February, 1920.

On the 27th day of November, 1915, William B. H. Pool executed a quitclaim deed to his wife, Jessie G. B. Pool, to the 220 acres of land in this suit. This deed contained a proviso that she was to make a deed to James H. McCollum to the south 80 acres for defending the title to said lands. This deed was filed for record on December 1, 1915.

On July 1, 1916, William B. H. Pool and Jessie G. B. Pool, his wife, executed a warranty deed to James H. McCollum to said 80 acres of land, which is also involved in this suit.

The record shows that Philander Pool is now dead. The evidence as to whether or not William B. H. Pool was born as the fruits of the marriage of Philander Pool and Mary Pool will be stated and discussed under an appropriate heading in the opinion.

On the 6th day of November, 1924, a decree was entered of record in which the court found that Philander Pool was dead; "that Mary Pool was eighty years of age; that William B. H. Pool was, at the time of the execution of the Billingsley deed and at the time of the filing of the suit herein, and at the time of the trial, the only·child of Mary Pool; that plaintiff was the owner of the 80 acres of land described in the complaint, and Jessie G. B. Pool was the owner of the other 140 acres in controversy, subject to the estate for the life of Mary

Pool; that the Yates oil and gas lease should be canceled; that the deeds from Mary Pool and Philander Pool to Eversmeyer and from Eversmeyer and wife to Hein should be canceled, except as to the estate for the life of Mary Pool; and that the plaintiff's title to the 80 acres and the title of Jessie G. B. Pool to the 140 acres should be quieted and confirmed, subject to the said life estate; that the defendants, P. F. Hein and W. M. Kennedy, should be perpetually enjoined from cutting timber and crossties and committing waste on the plaintiff's 80 acres; that in the exchange of lands the said P. F. Hein had paid the sum of $8,240 for the 220 acres, which sum was the agreed value of said 220 acres by and between the said A. H. Eversmeyer and wife and P. F. Hein at the time of the sale and exchange of said lands, and that the agreed value of the Nevada County land, at the time of the sale and exchange, was $12,000; that, on account of the infirmities and failure of title of the Hempstead County land, said P. F. Hein had been damaged in the sum of $8,240, and was entitled to recover said sum from the said A. H. Eversmeyer and Hattie Eversmeyer, his wife. Decree was entered in accordance with said findings, canceling said oil and gas lease and deeds, and quieting and confirming plaintiff's title to the 80 acres and Jessie G. B. Pool's title to the 140 acres, subject to said life estate, and perpetually enjoining the defendants, Hein and Kennedy, from cutting crossties and timber or permitting waste on plaintiff's said 80 acres, and rendering judgment against the defendant Hein in favor of plaintiff for $70.80, and rendering judgment against the defendants A. H. Eversmeyer and wife in favor of P. F. Hein on his cross-complaint for $8,240, and declaring the same to be a lien on the Nevada County land and said life estate in said Hempstead County land, and ordering said land sold in default in the payment of said sum, and for which execution might issue."

The case is here on appeal.

*Jobe & Jobe,* for appellant.

*U. A. Gentry,* for appellee.

HART, J., (after stating the facts). The decision of the chancellor is based upon the theory that the deed of T. R. Billingsley and wife to the 220 acres of land in Hempstead County, Arkansas, conveyed a life estate to Mary Pool with the remainder to Dr. W. H. B. Pool, who was found to be her son.

In the first place it is sought to reverse the decree upon the theory that the Billingsley deed conveyed the fee to Mary Pool, under the rule in Shelley's Case, as declared in *Hardage* v. *Stroope*, 58 Ark. 303, and *Ryan* v. *Ryan*, 138 Ark. 362.

Mary Pool and Philander Pool, her husband, conveyed the land by warranty deed to A. H. Eversmeyer, and he in turn conveyed it by warranty deed to P. F. Hein, who claims to be the present owner.

We do not think the rule in Shelley's Case has any application under the language of the Billingsley deed. In looking for the intention of the grantor we must be guided by the words which he has used, reading them in the light of established principles of law. Under the terms of the deed of T. R. Billingsley, the entire fee in the 220 acres in controversy is conveyed. The fee is carved up into a life estate for the benefit of Mary Pool and her husband, Philander Pool, with the remainder over to Dr. W. H. B. Pool, her child, and, in case of his death before the life tenants, to other persons. It is clear from the language used that it was intended that Mary Pool and her husband should only have an estate during their natural lives, and that upon their death the land should go to the child or children born of Mary Pool, or the descendants of such child or children. The deed further provides that, if there be no child or children or their descendants in existence at their death, then the land should become the property of Nannie L. Mason, who was the child of Philander Pool by a former wife. Thus it appears from the language used that the words, "child or children born of Mary Pool or descendants of such child or children," meant the issue of Mary Pool living at her death, or at the death of her husband

Philander Pool, and not the whole line of succession which would be included under the words, "heirs of the body," and the words used must necessarily be construed to be the words of purchase, and the rule in Shelley's Case does not apply. The language of the deed clearly gives a life estate to Mary Pool, with the remainder over to her son, Dr. W. H. B. Pool, under the rule announced in the repeated decisions of this court. *Horsley* v. *Hilburn,* 44 Ark. 458; *Watson* v. *Wolff-Goldman Realty Co.,* 95 Ark. 18; *Georgia State Savings Association* v. *Dearing,* 128 Ark. 149; and *Gray* v. *McGuire,* 140 Ark. 109, and cases cited.

The rule in Shelley's Case is applicable only when the language used in the conveyance creates a limitation to the heirs of the grantor in general. If the limitation is to the heirs of the body of the grantee, the rule in Shelley's Case does not apply.

Philander Pool is dead, and Mary Pool is still alive. It follows then that the chancellor was correct in holding that only a life estate was conveyed to Mary Pool, and his holding that Dr. W. H. B. Pool is the remainderman depends upon whether the proof shows him to be the son of her marriage with Philander Pool.

On this phase of the case the testimony is in irreconcilable conflict. Philander Pool and Mary Pool were both witnesses in the case, and both testified in positive language that Dr. W. H. B. Pool was not their son.

According to the testimony of Philander Pool, he was 76 years old when he testified in January, 1916, and he married Mary Pool in 1881. His wife had a miscarriage in 1885, and the attending physician persuaded him to take a child which he brought to his house, and tell his wife that it was a child born unto her. The child was less than twenty-four hours old when the physician brought him there. They reared the child as their own, and always spoke of him as their son. Dr. W. B. H. Pool is the child in question. Mary Pool was of nearly the same age as her husband, and corroborated his testimony in the matter.

On the other hand, Dr. W. B. H. Pool testified that he was raised and educated by Philander Pool and Mary Pool, and was always told by them that he was their own son. There never was any intimation that such was not the case until his mother filed the suit in the Hempstead Chancery Court in 1915, which had for its object the reformation of the Billingsley deed so as to vest title in fee simple in her to the 220 acres of land in question.

U. L. Lovell, who worked for and boarded with the Pools when Dr. Pool was born, told in detail about being sent for the physician, and the birth of the child about seven o'clock in the morning. He worked with the Pools for about eight months after this, and never heard any intimation that Dr. Pool was not the child of Mary Pool. He was present at the house after the physician was summoned, and does not think that any child could have been brought in and substituted as a child born of Mary Pool on that morning, without his knowledge.

Several other persons who lived in the neighborhood testified that Dr. Pool was regarded as the son of Mary Pool and Philander Pool, and that they never heard his birth questioned during his childhood.

When the petition for the division of the Kentucky land in the circuit court of Henderson County was filed, Mary Pool signed the petition in which Dr. Pool was represented to be the child of herself and her husband. At this time he was 27 years of age. The form of the deed used in the conveyance by Billingsley was expressly provided in the order of the court to be the same as that used in the deed to the Kentucky land. It was recognized by the parties that Mary Pool had only a life estate in the Henderson County, Kentucky, land. It would seem that this was the purpose in providing that the grantees should be described in the deed in the same way as they were described in the deed to the Kentucky land. Of course, it could make no difference to Billingsley who the grantees were. He evidently executed the deed in the manner provided by the petitioners in the order they procured from the circuit court in Henderson County, Kentucky.

To avoid the force of their action in the circuit court proceeding in Henderson County, Kentucky, Mary Pool and Philander Pool claimed that they were persuaded by false statements to make the deed in this way.

In the first place, it may be stated that the attendant circumstances do not warrant such a finding, and no statement whatever of what Dr. Pool said to cause them to sign a false application is testified to by them. In the next place, no complaint was made from the time this was done, which was in July, 1910, until Mary Pool instituted the chancery suit in Hempstead County, Arkansas, in September, 1915. The fact that the petitioners asked the Henderson Circuit Court to have two-thirds of the proceeds derived from the sale of the Henderson County land invested in the Hempstead County land and the grantees to be described just as they were in the deed to the Kentucky land, shows that the parties acted with deliberation, and intended for their rights to become the same in the Arkansas land as they were in the Kentucky land.

When all the attending facts and circumstances are considered, it cannot be said that the finding of the chancellor on this point is not sustained by a preponderance of the evidence.

Both A. H. Eversmeyer and P. F. Hein have appealed to this court. The chancellor found that P. F. Hein was entitled to recover on his cross-complaint against A. H. Eversmeyer the sum of $8,240 as damages for the failure of his title.

It is insisted that this is wrong because Dr. Pool had only a contingent remainder in the land under the holding in *Watson* v. *Wolff-Goldman Realty Co.,* 95 Ark. 18, and *Liberty Central Trust Co.* v. *Vaughan,* 167 Ark. 219, and cases cited. Certainly, when the deed was executed, it was uncertain who the remaindermen were, and it is not possible now to ascertain who they will be until the death of Mary Pool. Therefore, under the authorities cited, the remainder was contingent, and no title passes to the contingent remaindermen until the happen-

ing of the contingency, and, strictly speaking, the recovery could not be had.

It is well settled, however, in this State that chancery cases are tried *de novo* upon the record made in the court below, and we do not think that the finding of the chancellor in this respect was against the weight of the evidence.

It appears from the evidence in the record that Mary Pool is over 80 years of age and is very feeble. Dr. Pool is in the prime of life, and is a married man. The record shows that he already has two minor children. P. F. Hein executed an oil and gas lease to the land in question under the belief that he had received a title in fee to the land in his deed from A. H. Eversmeyer, and this lease is canceled. When all these matters are considered, it is plain that the chancellor might have found that he had been already damaged in a sum at least as great as that found by him. Therefore the finding of the chancellor in this respect will be sustained.

Under the authorities above cited, and particularly that of *Watson* v. *Wolff-Goldman Realty Co.*, 95 Ark. 18, James H. McCollum as the grantee of Dr. W. H. B. Pool as the contingent remainderman, and Jessie G. B. Pool as grantee of Dr. W. H. B. Pool, had the right to bring an action against P. F. Hein and the other defendants to prevent waste, but they had no right to have the title quieted in them, subject only to the life estate of Mary Pool. As above stated, no title passed to the contingent remaindermen until the happening of the contingency, which was, if their grantor was living at the time of the death of Mary Pool, and in the interim they would have no right to have the title quieted in themselves subject to the life estate of Mary Pool, because this would interfere with the rights of the two minor children of Dr. Pool, and possibly with the rights of appellants. It may be that Dr. Pool might die before his mother. In which event his two minor children would become the contingent remaindermen, and

the land would go to them at the death of the life tenant, Mary Pool. If the two minor children of Dr. Pool should die before the death of Mary Pool—a contingency which is possible—then Nannie L. Mason would become the remainderman, and, inasmuch as she has conveyed her interest in the land to Mary Pool, the life estate and the remainder would be merged.

For the error in entering a decree quieting the title in James H. McCollum and Jessie G. B. Pool, subject to the life estate of Mary Pool, the decree must be reversed, and the cause remanded with directions to render a decree declaring them to be contingent remaindermen, as decided in this opinion. In all other respects the decision of the chancellor was correct, and the decree will be affirmed except as indicated.