FIRST NATIONAL BANK OF FT. SMITH v. GRAHAM.

4-4937

Opinion delivered February 7, 1938.

Daily & Woods, for appellant.

Hardin & Barton, for appellee.

BAKER, J. This suit in ejectment was brought by the appellee to recover a tract of land which is a part of the north half of the southwest quarter and northwest quarter of the southeast quarter of section 24, township 8 north, range 30 west. It is unnecessary here to describe more definitely. Appellee's complaint alleges that both the plaintiff and defendant claim title from T. H. Powers as the common source. Powers and his wife had executed a deed to their daughter, Tadie Graham. It was set forth in full in the complaint. Those essential parts in controversy are copied.

"We, T. H. Powers and Mattie Powers, in consideration of the sum of one dollar, and the love and affection we bear our daughter, Tadie Graham, to us in hand paid by Tadie Graham, the receipt of which is hereby acknowledged, grant, bargain, sell and convey to the said Tadie Graham for and during her natural life and at her death to descend and go to her children and heirs-

at-law in fee simple, and unto her heirs and assigns forever, the following described real estate, (here follows description of the real estate set forth above).

"To have and to hold unto the said Tadie Graham, her heirs and assigns as aforesaid forever. (Then follows warranty of title and against incumbrances in common form, and conveyance and relinquishment of dower and homestead by Mattie Powers in common form.) Preceding the signatures, and attached to the deed is a rider, as follows:

"My health having become impaired and owning considerable real estate and being unable to look after it, I have this day made deeds to my son, H. J. Powers, and my four daughters, Verglon Brown, Lydia Bugg, Tadie Graham and Ethel Stem, for certain real estate described in said deeds, and the land deed deeded to each being equal in value, and which said deeds to said lands are to be considered by each child as an advancement to the child named in said deed, it being hereby expressly agreed and understood, and said deeds are so accepted by each child, that my two minor sons, Arla Powers, aged 17, and Moultie Powers, aged 15, are entitled to and shall receive from my estate, either at their maturity, or at my death an amount of land equal in value to that this day deeded to said other five children, already valued and set apart at this date for two minors, and the said H. J. Powers, Verglon Brown, Lydia Bugg, Tadie Graham and Ethel Stem each separately and severally agree as a part consideration for the deed so received by each, that they will each, for six years beginning January 1st, 1924, pay to me one-half rent each year for all and every kind of crop raised on said land so deeded to each, said rent to be the customary rent paid for such crop as shall be raised on said land, and one-half of the rent received by any or all of them from houses or dwellings which are rented by them which are located on any of said lands so deeded."

Plaintiff further alleged that Tadie Graham had executed a mortgage upon this property to secure an indebtedness, and the effect of that pleading was that the

mortgage had been regularly foreclosed and the property had been purchased at a foreclosure sale by the First National Bank of Fort Smith and that it was in possession. The plaintiff asserted no irregularity or illegality in the matter of foreclosure. A demurrer to the complaint was overruled. Defendant declined to plead further and judgment was rendered accordingly.

The only question presented in the trial court, and here upon appeal, is the effect of the deed executed by Powers and his wife to his daughter, Tadie Graham. A construction of that deed settles the whole controversy.

The appellant insists that the rule in Shelley's case is applicable. The appellee is equally insistent that under the rules of construction, as they relate to conveyancing, full effect must be given to the intention of the grantor as expressed in the whole instrument and that method of construction results, as it did in the lower court, in a declaration or construction favoring the appellee and a consequent affirmance upon this appeal. Following appellee's contention, as far as we are able, we do not arrive at the same conclusion in all respects counsel of appellee insist upon.

It is true that the deed is written "convey to said Tadie Graham for and during her natural life." Of course, if that were all, there would be no question and appellant would not even insist that the grantee took more than her life estate in the property, but the grantor added in the same sentence and after the word "life" the words, "and at her death to descend and go to her children and heirs-at-law in fee simple, and unto her heirs and assigns forever." Now if we attempt to follow the theory of the appellee what must necessarily be the conclusion? Do the children and heirs-at-law of Tadie Graham take any interest of the property by reason of this conveyance? That does not seem to be the intention of the grantor. He says "to descend and go to her children," so it must appear that this idea was that her children would take under the law of descent, that is, whatever interest they might have in the land, ultimately, would be by inheritance.

It, therefore, seems to us that under the very theory insisted upon, the children of Tadie Graham obtained or held no interest by reason of the deed and the grantor must have intended an estate of inheritance because he attempted to provide for one, and that intention may help to determine the legal effect of the deed. What we are trying to say is that his intention as to the conveyance added nothing to the force or effect of the law, but that intention as expressed may make applicable well known principles.

It is argued that the words "to descend and go to her children and heirs-at-law in fee simple" were words written into a blank of a printed form and that the succeeding words "heirs and assigns forever" were parts of the printed form and, therefore, we should give, in the construction of this instrument, full force and effect to that part written in rather than to the printed portion of the instrument. We have no fault to find with that contention, except that the two expressions, the written in portion and the printed portion, seem not to be in conflict and, therefore, both can stand. Had the grantor not intended this, that portion of the printed deed deemed unnecessary might well have been canceled in the making and execution of the deed, but the evidence is to the effect that it was adopted, as we are advised. "And unto her" are words written in by the grantor showing his adoption of the succeeding printed portion.

It is also insisted that we must take the whole deed and construe it in order to get the intention of the grantor. In the habendum clause we have this language, "To Have and To Hold unto the said Tadie Graham, her heirs and assigns as aforesaid forever." We understand, of course, that this clause is no part of the grant, but attention is called to it merely to show that there is no conflict in that clause and in the granting clause so far as the apparent intention of the grantor is concerned as expressed therein. It is also argued that the rider attached to the deed, or the last paragraph above set out, wherein the grantor shows that he has made a distribution of certain of his lands, and provides that each of his

children so receiving the deeds shall take their respective lands as advancements and also a provision for two minor children, and a further provision as a consideration, in part, at least, for the grant, that the grantees agree to pay one-half the customary rent upon the lands for a period of six years. If we attempt to follow the grantor's intentions in all respects we arrive at serious legal difficulties when we consider this last paragraph. It is argued, or at least, implied by argument that the grantor did not expect his grantee to dispose of the lands and that the implication is that he was in a certain sense withholding a completed grant in the hands of the daughter, Tadie Graham; that it was his intention that she should control the property, collect therefrom the rents for at least a period of six years and pay him one-half the rent. That may be true, but it is also the intention from the foregoing part, already considered, that if his daughter died immediately after the grant, it should descend and go to her children, and we presume it might be said that he expected the children in like manner to pay him rent for the remaining portion of the six years, and if that be true, there would not have been any more of a completed grant even in her children than Tadie Graham had.

We have called attention to these matters for the reason we think it must appear therefrom that sometimes those who are inexperienced in conveyancing may not be able to express themselves fully and in such cases those making deeds, or executing similar instruments must be deemed to have written into such instruments, as all others are, the legal meaning implied by the words they have used; that if they should make a grant and thereafter attempt to insert conditions, agreements, or stipulations in contradiction thereof, that since the law favors alienation and the facility therefor, the grant will be deemed completed when possible to do so, though such attempted limitations a p p e a r in the same instrument.

So we think it apparent that the grantor in this case meant that Tadie Graham's children, her lineal heirs,

should take or receive by inheritance whatever interest they might ever have in the property, that if she left no lineal heirs, then her collateral heirs, in like manner, should take by inheritance.

In other words the conveyance was to Tadie Graham for her life and to her heirs.

Appellant cites the case of *Hardage v. Stroope,* 58 Ark. 303, 24 S. W. 490, as controlling in this case. That case so far as we are advised at this time, has never been overruled or modified in any respect. It has been a rule of property in this state for fifty years.

Our attention is called to the announcement that it was held in that opinion that the rule in Shelley's Case was a part of the common law adopted by our state. This statute adopting the common law is now § 1679 of Pope's Digest. We adopted the rule in Shelley's Case and have applied and enforced it, subject to only one modification by statute which statutory provision is such as to abolish the estates tail. That change is in accordance with the provisions of § 1799 of Pope's Digest.

In a much more recent case than *Hardage v. Stroope, supra,* that of *Eversmeyer v. McCollum,* 171 Ark. 117, 283 S. W. 379, it was announced that "the rule in Shelley's Case is applicable only when the language used in the conveyance creates a limitation to the heirs of the grantee in general. If the limitation is to the heirs of the body of the grantee, the rule in Shelley's Case does not apply." But the facts there stated and the announcement are clearly distinguishable from the instant case.

In the case of *Hardage v. Stroope, supra,* the language construed was in the habendum clause, where it said:

"to have and to hold the said lands unto the said Tennessee M. Carroll for and during her natural life, and then to the heirs of her body, in fee simple; and if, at her death there are no heirs of her body to take the said land, then in that case to be divided and distributed according to the laws of descent and distribution in this state."

In regard thereto the court said:

"It is obvious that the deed to Mrs. Carroll created in her no estate in tail. . . . .

"The effect of the deed, as explained by the habendum, in the absence of the rule in Shelley's Case, was to convey the land to Mrs. Carroll for her life, and then to her lineal heirs, and in default thereof to her collateral heirs. As there can be collateral heirs only in the absence of the lineal, the deed conveyed the land to Mrs. Carroll, in legal phraseology, for her life, and after her death to her heirs."

By change of names the case of *Hardage v. Stroope, supra*, fits the facts in the instant case with such exact nicety there is apparently little left for comment. The children of Tadie Graham took nothing by the purchase or under the language of the deed as stated. Whatever interest they may have ever acquired in this land must have been by inheritance. In fact, the deed expressly so provided that the land should "descend and go to her children and her heirs-at-law." The rule in Shelley's Case, therefore, applies just as it did in *Hardage v. Stroope, supra; Wilmans v. Robinson*, 67 Ark. 517, 55 S. W. 950.

Grantor did not convey to the "children" any more than to "her heirs and assigns." *Dempsey v. Davis*, 98 Ark. 570, 136 S. W. 975; *Rogers v. Ogburn*, 116 Ark. 233; 172 S. W. 867.

Since we are committed to this rule, there is no necessity to extend unduly this discussion by an attempted analysis of other or similar cases.

It follows, therefore, the court erred in overruling appellant's demurrer. The judgment is reversed, and the case is remanded with directions to the trial court to sustain the demurrer and for such further action as may be advisable not inconsistent with this opinion.