WATSON *v.* WOLFF-GOLDMAN REALTY COMPANY.

Opinion delivered May 2, 1910.

1. DEEDS—BODILY HEIRS.—A deed to A and her "bodily heirs" means the same as to her and to the heirs of her body, and, under Kirby's Digest, § 735, creates a life estate in A with remainder in fee simple to her surviving children and *per stirpes* to the issue of such as die during A's life. (Page 21.)

2. SAME—EFFECT OF TERM "AND ASSIGNS FOREVER."—In a conveyance unto A "and unto her bodily heirs *and assigns forever*" the words italicized do not add to or take from the estate granted, but are merely declaratory of the power of alienation which the grantee possesses without them. (Page 21.)

3.  SAME—CONVEYANCE TO A AND BODILY HEIRS—ESTATE OF HEIRS.—A conveyance unto A and unto her bodily heirs created a contingent remainder in the bodily heirs. (Page 22.)

4.  INJUNCTION—WASTE BY LIFE TENANT.—A contingent remainderman may obtain relief in equity by injunction to prevent the life tenant or his assignee from committing future waste. (Page 23.)

5.  EQUITY—ACCOUNTING OF WASTE BY LIFE TENANT.—Where a life tenant or his assignee had committed waste of the *corpus* of the estate, equity, at the instance of a contingent remainderman, will take an account of the amount of damage suffered and impound the same and invest it for the benefit of the persons entitled thereto at the expiration of the life estate. (Page 24.)

Appeal from Jackson Chancery Court; *George T. Humphries,* Chancellor; reversed.

STATEMENT BY THE COURT.

On the 1st day of January, 1875, Atlas J. Dodd executed the following deed to certain lands in Jackson County, Arkansas: "Know all men by these presents that I, Atlas J. Dodd, for and in consideration of the natural love and affection that I have for my daughter, Martha F., and for the further sum of one dollar to be paid by the said Martha Florence, my daughter, do hereby grant, bargain and sell unto the said Martha Florence and unto her bodily heirs and assigns forever the following lands: (Here follows description of the lands). To have and to hold the same unto the said Martha Florence and unto her bodily heirs and assigns forever, with all the appurtenances thereunto belonging. And I hereby covenant with the said Martha Florence that I will forever warrant and defend the title to said lands against all claims whatever."

Before that time his daughter, Martha Florence, had intermarried with R. P. Watson, and five children were born unto them. R. P. Watson died, and Martha Florence was subsequently married to W. S. Walls, and on the 14th day of January, 1901, they conveyed the lands above referred to to Wm. T. Day, who, on January 22, 1904, conveyed said lands to the Wolff-Goldman Realty Company. The latter company sold the timber on said lands to W. O. Wilkins and W. B. Gregory on the 12th day of April, 1906. The said Wilkins and Gregory entered upon said lands and began to cut and remove the timber therefrom. It is agreed that the value of the timber on said

lands is $3,806.88.   On the 2d day of November, 1908, Silvey
Watson, Baxter Watson, Belle Fry and Grace Whitten instituted
this action in the Jackson Chancery Court against the Wolff-
Goldman Realty Company, Sigmund Wolff, Isaac Goldman and
Marjorie Simmons, who is another daughter of Martha Florence
Walls.   The object and purpose of the suit was to restrain the
defendants from cutting or permitting to be cut the timber on
said lands, and to have an accounting for the timber already
cut; or, if the court held they were not entitled to a present
accounting for the waste already committed, that the defendant
Wolff-Goldman Realty Company be required to pay the pro-
ceeds into court, and that such proceeds be invested for their
benefit, and for an injunction to prevent said defendant from
committing further waste.   ·

The chancellor found the effect of the deed of Dodd was
to convey a life estate to his daughter, Martha Florence, with
a contingent remainder over to her children.   That the deed
of Martha Florence only conveyed her life estate, and that the
defendant Wolff-Goldman Realty Company had no right to
sell the timber on said lands.   That the plaintiffs as contingent
remaindermen had a right to an injunction to prevent further
waste, but were not entitled to any relief for waste already
committed, and a decree was entered in accordance with his
findings.   Both plaintiffs and defendants have appealed to
this court.

*John W. & Jos. M. Stayton,* for appellant.

The deed created a life estate in the grantee, with remain-
der over to her children in fee simple.   Kirby's Dig., § 735;
44 Ark. 458; 49 Ark. 125; 67 Ark. 517; 72 Ark. 336; 17 O. St.
446; 7 N. J. Law 363; 49 *Id.* 475.   The remainder created in the
children a vested remainder, and they are entitled to an injunc-
tion to prevent further cutting, as well as an accounting for
that already cut.   68 Ark. 376; 61 Md. 149; 2 Sandf. Chy. 533;
5 Wall. 268; 6 Wall. 458; 19 Wall. 167; 4 Pet. 1; 6 Pet. 622;
*Id.* 595; 74 Ark. 347; 44 Ark. 476; 63 Ark. 15; 15 Barb. 225;
70 N. Y. 147; 55 Ind. 71; 36 Ga. 97; 64 Pa. Sup. Ct. 324; 1
Bland, Ch. 569; 2 Peere W. 240; 10 Ves. 273; 3 Atk. 209; 31
W. Va. 621; 19 Am. Dec. 350; 42 N. Y. Sup. Ct. 921; 1 Ves.
Jr. 78.

*Joseph W. Phillips,* for appellee.

There was no such thing as an estate tail at common law. 44 Ark. 475. If the reversion was cut off, then it was no longer an estate tail, but became a fee simple. 58 Ark. 306. The word "assigns" in a deed evidences an intention to give the grantee the power to sell and dispose of the property. 28 Tex. 296.

*John W. & Joseph M. Stayton,* in reply.

Appellants are entitled to an accounting. 113 U. S. 340; 6 Wall. 458; 25 Wend. 119; 1 Allen 223; 36 Ark. 364; 59 Miss. 289; 93 Mo. App. 277; 100 S. W. 258; 3 J. J. Marsh. 93; 127 N. C. 198; 99 N. C. 198; 75 N. C. 193; 228 Ill. 507; 139 N. C. 9; 240 Ill. 486; *Id.* 361; 25 S. C. 163.

HART, J., (after stating the facts). In this State no distinction is made between the meaning of the words "bodily heirs" and "heirs of the body," when used in a conveyance, and it is a principle firmly established in this State that, under section 735 of Kirby's Digest, a deed of conveyance to the grantee and his bodily heirs creates a life estate in the grantee with the remainder in fee simple in his children that survive him, and the issue of such as die during his life *per stirpes.* *Horsley* v. *Hilburn,* 44 Ark. 459; *Wilmans* v. *Robinson,* 67 Ark. 517.

So it may be said that the rule of construction laid down in these cases will govern in the case at bar unless the addition of the phrase "and assigns forever" to the words "bodily heirs" has the effect to make the estate to Martha Florence by the deed an estate in fee simple.

The word "forever" is one of time, but the term relates to the person to whom the property is given, and not the estate granted. If the words "bodily heirs" are presumed to have been used by the grantor in their legal sense, so the word "forever" will be presumed to have been likewise used; and if it relates to the person and not to the property, it can not serve to either add to or take from the estate granted by the former words, "bodily heirs;" and the use of the words together does not enlarge the estate to a fee simple.

In Williams on Real Property (17th ed.), p. 178, it is said that the words "and assigns forever" have no conveyancing virtue at all, but are merely declaratory of that power of alien-

ation which the purchaser possesses without them. And in the case of *Pollock* v. *Speidel,* 17 Ohio St., at p. 446, the court said that the use of the word "assigns" in the connection in which it was used in the present case "only imports that the estate granted may be transferred, and can not operate to enlarge the grant or defeat its express limitations." To the same effect see *Weart* v. *Cruser,* 49 N. J. L., at p. 479, and cases cited; *Corbin* v. *Healy,* 37 Mass. 514; *Lessee of Hall* v. *Vandergrift,* 3 Binney (Pa.) 374; *Lessee of Wright* v. *Scott,* 4 Wash. C. C. 16; and *Dennis* v. *Wilson,* 107 Mass. 591, where it is held that the term "forever" does not impart inheritable qualities.; *Haynes* v. *Bourn,* 42 Vt. at p. 691.

If the words "and assigns forever" do not serve to add to or take from the estate granted, the deed, in all essential respects, is similar to that in the above-mentioned cases, and this case is ruled by them. That is to say, under section 735 of Kirby's Digest, Martha Florence took a life estate, and the remainder passed in fee simple absolute to the person to whom the estate tail would first pass according to the course of the common law by virtue of the conveyance.

The next question that presents itself for our consideration is whether the remainder passed by section 735 of Kirby's Digest is vested or contingent. It is urged with much force by counsel for appellant that the remainder is a vested one, but this court has decided adversely to their contention in the case of *Horsley* v. *Hilburn, supra.* In that case the property was conveyed to Marietta Hilburn "and the heirs of her body." At the time the conveyance was made Mrs. Hilburn had issue living, Robert and Ida. Subsequently, other children were born unto her. Ida died before her mother, without issue. After the death of Ida, Mrs. Hilburn conveyed her interest in the property. In construing section 735 of Kirby's Digest, which was enacted in 1837, the court held that Mrs. Hilburn took only a life estate, and that her conveyance could affect that alone, unless Ida had a vested interest which her mother inherited. In discussing this question the court said: "The statute says that the remainder shall pass in fee simple absolute to the person to whom the estate tail would first pass according to the course of the common law. It never could, under the circumstances, have passed to Ida at common law. During

her mother's lifetime she was not heir at all. At her mother's death she was gone without leaving issue. There had been only a contingency that she might get an interest by surviving the mother, and that a vague and uncertain interest, which might be more or less according as there might be no more or many brothers and sisters. Nothing was vested as a right which she might transmit. At common law, the surviving brothers, sisters and their descendants *per stirpes* would be entitled to have the estate pass to them on the death of the mother, without any portion being intercepted by inheritance from Ida. (See Fearne on Remainders, vol 2, p. 202). The estate vested in the surviving children and their issue at the death of the mother, and did not vest in remainder at all in any one during her life. The mother inherited nothing from Ida, and the court erred in holding that she did, and that the interest of Ida passed by her deed through Greenwood to Burrell Horsley."

The effect of the decision was to hold that only a contingent remainder passed to Ida by the deed; for, if Ida took a vested remainder with a defeasible interest, the court would not have held that Mrs. Hilburn did not inherit from her.

The case was decided at the November term, 1884, of the court, and has become a rule of property in this State. Therefore, whether the decision was right or wrong is not a question of law for the court to determine, but is one of expediency that addresses itself to the Legislature. Following the rule of construction announced in that case, it is plain that, under the deed now in question, the plaintiffs took a contingent remainder.

This brings us to a consideration of the question, what are the rights of a contingent remainderman in regard to the commission of waste by the life tenant or his grantee?

It is well settled that the rights of a remainderman, whether vested or contingent, are more extensive in equity than at law; and it is equally well settled that he may obtain relief in equity by injunction to prevent the life tenant or his grantee from committing waste. 5 Pomeroy's Equity Jurisprudence, § § 491, 492; 16 Cyc. 658. "An injunction to stay waste may be granted in favor of one who is entitled to a contingent or executory estate of inheritance." 30 Am. & Eng. Enc. Law (2d ed.), p. 290.

The most serious question in the case is whether a contingent remainderman may seek relief in equity for waste already committed. The courts of this country have held that a contingent remainderman can not maintain an action at law to recover damages for waste already committed. For a collection of the principal cases on the subject see 30 Am. & Eng. Enc. Law (2d ed.), p. 1. The reason a contingent remainderman has no standing in a court of law is that it can not be known in advance of the happening of the contingency whether he would suffer damage or loss by the waste; and if the estate never became vested in him, he would be paid for that which he had not lost.

On the other hand, it is a rule of universal application that a contingent remainderman may obtain relief in equity by injunction to prevent waste, and this remedy is given him on the theory that he is entitled to prevent the loss or destruction of that which may become his at the termination of the life estate. If a contingent remainderman has a right to appeal to a court of equity for the preservation and security of the property, to the end that it may be forthcoming at the termination of the life estate, with like reason he should have some remedy for waste already committed. Neither the life tenant nor his grantee have the right to commit waste, and it necessarily follows that they should not be entitled to or enjoy the fruits of their wrongdoing. As we have already seen, the contingent remainderman has no remedy at law in such cases, and it is obvious that, if he can not obtain relief in equity, he must suffer irreparable injury.

Two of the cardinal principles of chancery jurisprudence are, that equity will not suffer a wrong to be without a remedy, and equity looks to the substance rather than the form. According to the views we have expressed in this opinion, if any of the plaintiffs or their issue are alive at the death of their mother, the life tenant, their estate will become a vested remainder in fee simple. Some of the plaintiffs are married, and in the ordinary course of nature the strong probabilities are that at least some of them or their children will outlive their mother, the life tenant.

In the case of *Kollock* v. *Webb,* 113 Ga. 762, the court held that "remaindermen, whether their interest be vested or

contingent, may appeal to a court of equity to prevent the life tenant from wasting or destroying the *corpus* of the estate;" and the court quoted from the opinion in the case of *Clarke* v. *Deveaux,* 1 Rich. Eq. (S. C.) 172, as follows: "If the remainder is only contingent, still the party representing it, as we have said, is not prevented from seeking the aid of this court for its safety and preservation. A *cestui que trust,* though entitled to a mere contingent benefit, may, upon reasonable cause shown, apply to this court to have his interest properly secured. * * * It might not, probably, be stretching the jurisdiction of equity too far to say that one who holds for a contingent remainderman, and who fraudulently converts the estate confided to him to his own use, may be held to answer for such disposition, either by requiring an account and the payment of the money into court, or, if the property is still under his control, to transfer it to the succeeding trustee." This view is supported by the English authorities. See *Bateman* v. *Hotchkin,* 31 Beav. 486; *Garth* v. *Cotton,* 3 Atk. 751; *Bewick* v. *Whitfield,* 3 Peere Wms. 266; *Bagot* v. *Bagot,* 9 Jurist (N. S.) 1022.

For these reasons it seems to us that the plaintiffs are entitled to equitable relief. They should not be entitled to it now by way of indemnity, for it can not be certainly known that they will suffer loss; but we are of the opinion that it is in accord with the principles of equity for the chancellor in cases like this to take an account of the amount of the damage suffered and impound the same and invest the proceeds for the benefit of the one to whom the estate tail would first pass according to the course of the common law by virtue of the deed in question, in which interest the plaintiffs have an expectancy.

For error in not doing this the decree of the chancery court will be reversed with directions to proceed in accordance with this opinion; in all other respects the decree will be affirmed.