PLETNER v. SOUTHERN LUMBER COMPANY.

Opinion delivered March 21, 1927.

1. WILLS—CONSTRUCTION—TESTATOR'S INTENTION.—The intention of a testator must be ascertained from the language of the will, and must be given effect unless at variance with the recognized rules of law.

2. WILLS—CONSTRUCTION AS A WHOLE.—In ascertaining the intention of a testator, the will must be construed as a whole.

3. WILLS—TECHNICAL WORDS.—Generally, technical words in a will should be construed in their technical sense.

4. WILLS—PRESUMPTION.—It is presumed that the testator intended to dispose of his entire estate unless the language of the will shows to the contrary, and that he intends to vest the estate at the earliest possible moment.

5. WILLS—LIFE ESTATE.—A devise to a wife of a homestead with all the stock and household goods for life "and, if that is not sufficient, out of the remainder of my estate, for her own special benefit," *held* to be a devise to her of a life estate in all of the testator's property, both real and personal, excepting a specific bequest.

6. WILLS—REMAINDER—CONSTRUCTION.—A devise to a wife for life with remainder to another and her bodily heirs *held* to create a fee simple estate in the remainderman after the wife's death; Crawford & Moses' Dig., § 1499, relating to fees tail, not being applicable.

Appeal from Bradley Chancery Court; *E. G. Hammock,* Chancellor; affirmed.

*B. L. Beasley,* for appellant.

*Fred L. Purcell,* for appellee.

WOOD, J. This is an action instituted September 15, 1925, by Gillis Pletner, Moree Herring, Catherine McNew and Sam Bob Herring (hereafter called appellants) against the Southern Lumber Company (hereafter called appellee) to quiet the title to a tract of land in Bradley County. John C. Gillis was the owner of the land. He executed a will, which, omitting formal parts, is as follows: "I wish my wife, Artemus F. Gillis, to have the benefit of the homestead, together with all the stock and household goods, during her life, and, if that is not sufficient, out of the remainder of my estate for own special

benefit. And the one thousand dollars in gold now in the hands of S. W. Godfrey to go to Mary Elmira Godfrey, with the remainder of my estate to the said Mary Elmira Godfrey and her bodily heirs, and should the said Mary Elmira Godfrey die leaving no bodily heirs, I wish that portion of my estate to be turned over to my nephew, John M. Gillis, and his children, of Perry County, Alabama, Marion P. O.''

. The land in controversy was sold for the nonpayment of taxes for the year 1894, and was purchased by W. R. Watson, who, by mesne conveyances, transferred the same to the appellee. It was alleged in the complaint that the appellants are the bodily heirs of Mrs. Mary E. Herring, who is still living; that the tax sale under which the appellee claims through mesne conveyances is void, and that the deeds based on such sale were likewise void and clouds upon the appellants' title; that the appellants are the owners of a remainder interest in the lands as the heirs of Mrs. Mary E. Herring; that Mrs. Gillis died in 1911, leaving Gillis Pletner, who was born November 16, 1897; Moree Herring, who was born January 29, 1899; Catherine McNew, who was born May 18, 1904; and Sam Bob Herring, born August 12, 1915; that the deeds based on the tax sale be canceled, and that the appellee be restrained from cutting timber thereon, and that they be allowed to redeem the lands.

The answer admitted that John G. Gillis was the owner of the lands and that he executed the will above set forth, which was duly probated. The answer denied that the appellants were remaindermen under the will of Gillis, and denied that they had any right to redeem the land from the tax sale under which the appellee claims title. The appellee alleged that, on August 6, 1902, a confirmation decree was entered confirming the title to the lands in Hackney & Hume, under whom appellee claimed by warranty deed. The appellee further alleged that the will created a life estate in the lands of Artemus F. Gillis, the wife of John C. Gillis, and that a fee simple title passed, under the will, to Mary Elmira

Godfrey, now Mary E. Herring, who was living at the death of Mrs. Artemus F. Gillis in the year 1911. The appellee further alleged that, before Mrs. Gillis died, she terminated her life estate by selling to Mrs. Mary Elmira Godfrey such estate in 1897. The appellee further alleged that it, and those under whom it claimed, had paid taxes under color of title continuously since the tax sale in 1895. Appellee alleged that the appellants had not, before bringing the suit, filed an affidavit setting forth that they had tendered the amount of the taxes, costs and interest paid by the appellee for the land prior to the tax sale, nor the amount paid by it for taxes since the sale, with interest thereon, and had not tendered to the appellee the value of the improvements made thereon, and that same had been refused by the appellee.

There was a stipulation in the record to the effect that Mrs. Mary Elmira Godfrey is the same person as Mollie E. Herring; that Mollie E. Herring and the heirs of her body are the only lineal descendants of John C. Gillis, the testator; that Artemus F. Gillis was the wife and widow of John C. Gillis; that the lands in controversy were assessed in the name of Mrs. Fannie Gillis, and were forfeited for the taxes of 1894 and sold in 1895; that, in 1897, an agreement was entered into whereby, in consideration for a certain sum of money, Mrs. Artemus F. Gillis sold to Mollie E. Herring, the mother of plaintiffs, all her interest in the estate held by Mrs. Gillis under the will of her husband, and terminated such interest. It was agreed that the appellee acquired title to the land under mesne conveyances from those who purchased at the tax sale, and that the taxes had been regularly paid by the appellee on the lands since the sale, and that the lands were wild and unimproved. It was agreed that the record of wills and the confirmation decree should be considered in evidence. It was further agreed that the tax sale was void.

The cause was heard upon the pleadings, the stipulation, the exhibits to the pleadings, and the record and documentary evidence, and the trial court entered its

decree in favor of the appellee against the appellants, from which is this appeal:

The following are familiar rules in the construction of wills which have been often recognized by this court: The intention of the testator must be ascertained from the language of the will, and such intention, unless at variance with recognized rules of law, must govern and be given effect. In ascertaining the intention of the testator, the will must be taken and construed as a whole. Technical words used in a will should be construed generally in their technical sense. The presumption will be indulged that the testator intends to dispose of his entire estate in his will, unless something in the language of the will shows to the contrary. It will also be presumed, in the absence of language to the contrary, that it is the intention of the testator to vest the estate disposed of by the will at the earliest possible moment. See *Gregory* v. *Welsh*, 90 Ark. 152, 118 S. W. 404; *Fields* v. *Cline*, 161 Ark. 418, 256 S. W. 355; *Wooldridge* v. *Gillman*, 170 Ark. 163, 279 S. W. 20; *Gaines* v. *Arkansas National Bank*, 170 Ark. 679, 280 S. W. 993.

Mr. Alexander, in his commentary on Wills, vol. 2, page 1408, says: "Practically every will is dictated under the influence of family relationship, and the courts, in construing wills, lay hold of slight circumstances to raise a gift in favor of children rather than impute to the testator the intention of leaving them unprovided for. * * * In every instance all the facts and the provisions of the will are to be considered, and the intention of the testator will prevail if not contrary to the established principles of law and public policy, and such intention is at least inferentially expressed."

Now, applying these familiar rules to the language of the will under review, it appears that it was the intention of the testator, in the first clause, to dispose of all the "earthly goods of which God had blessed him," and evidently he used the terms "goods" in the sense of all his possessions, both real and personal. In the first sentence of the second clause he expresses the purpose

to give his wife, specifically, the homestead, with all the stock and household goods, evidently meaning the live-stock, and the personal effects of the household, *i. e.*, all personal property connected with the housekeeping. Then, apprehensive that this provision might not be sufficient to properly care for his wife, he concluded the bequest to her as follows: "And, if that is not suffi-cient, out of the remainder of my estate for her own special benefit." This provision, made for the benefit of his wife, was to continue "during her life."

It occurs to us therefore that the testator intended by this first sentence of the second paragraph of his will to bequeath to his wife a life estate in all his property, real and personal, except the one thousand dollars in gold mentioned in the next sentence as a specific bequest to Mary Elmira Godfrey.

This brings us to the construction to be given the second sentence of the second paragraph of the will, in which the testator makes a specific bequest of $1,000 in gold to Mary Elmira Godfrey, and makes the further devise to her and her bodily heirs of the *remainder* of his estate. This court has often ruled that, where land is conveyed, or devised, to a person and the heirs of the body, children, or issue of such person, such conveyance or devise creates an estate tail in the grantee or devisee, which, under our statute (§ 1499, C. & M. Digest) becomes an estate for life only in the grantee or devisee and a fee simple absolute in the person to whom the estate tail would first pass, according to the course of the common law, by virtue of such devise, grant or convey-ance. *Horsley* v. *Hilburn*, 44 Ark. 458: *Wilmans* v. *Rob-inson*, 67 Ark. 517, 55 S. W. 950; *Wheelock* v. *Simons*, 75 Ark. 19, 86 S. W. 830: *McDill* v. *Meyer*, 94 Ark. 615, 128 S. W. 364: *Watson* v. *Wolff-Goldman Realty Co.*, 95 Ark. 18, 128 S. W. 581, Ann. Cas. 1912A, 540; *Rogers* v. *Ogburn*, 116 Ark. 233, 172 S. W. 867; *Georgia St. Savings Assn.* v. *Dearing*, 128 Ark. 149, 193 S. W. 512; *Gray* v. *McGuire*, 140 Ark. 108, 215 S. W. 693; *Bell* v. *Gentry*, 141 Ark. 486, 218 S. W. 194; *Eversmeyer* v. *McCollum*, 171 Ark. 117, 283 S. W. 379.

But this familiar doctrine cannot have application here, for the reason that the estate is not devised to Mrs. Mary Elmira Godfrey and her bodily heirs, creating a life estate in her and a fee simple estate in her bodily heirs under the statute *supra.* The life estate, as we have seen, was previously devised to Mrs. Artemus F. Gillis, and the *remainder* of the estate, after such life estate, was devised to Mary Elmira Godfrey and her bodily heirs.

If the testator had intended to vest only a life estate in Mrs. Mary Elmira Godfrey, to take effect immediately upon the death of Mrs. Gillis, he doubtless would have designated the estate to be thus cast on Mrs. Godfrey as a "life estate" instead of as a "remainder." After he had carved out of the fee a life estate, and then vested the "remainder" in Mrs. Godfrey, he evidently meant to devise to her what remained of the estate in fee simple, which was all of it. The fee took it all, and there was nothing left to devise. To construe the will so as to vest the life estate in Mrs. Gillis and a life estate also in Mrs. Elmira Godfrey would be to make these clauses of the will repugnant and inconsistent. This could not have been the intention of the testator, and such construction must therefore be avoided in order to effectuate his purpose. Therefore, construing all the provisions of the will, it occurs to us that the testator intended to vest in Mrs. Gillis a life estate at his death, and at that time to vest in Mrs. Godfrey an estate in remainder (using the latter term in its technical sense), and, by so doing, to dispose of his entire estate.

Mr. Washburn, in his great work on Real Property, defines a remainder as "an estate or interest in lands or tenements to take effect in possession or enjoyment immediately upon the termination of a prior estate, which is created at the same time and by the same act or instrument and upon which such first-mentioned estate is made to depend." 2 Washburn on Real Property, p. 504. Further along the learned author says: "Whether vested or contingent, it is essential to a remainder * * *

and is an imperative rule of law, that it should take effect immediately on the termination of the prior estate, the particular estate and remainder together forming one continuous ownership. * * * From the doctrine above stated, that the particular estate and remainder form together, when united, but one estate of the extent or duration of the two, it follows that, while ever so many remainders in succession may be carved out of a fee simple if each is less than a fee, no remainder can be limited after a fee; for, when a fee has once been created, there can be nothing left by way of remainder to give away.''

We are convinced, from a consideration of the language of the whole will, that it was the intent of the testator to vest a life estate, as mentioned, in his wife, Artemus F. Gillis, and the remainder or fee simple estate in Mary Elmira Godfrey. The term ''remainder,'' as used in the clause containing the devise to Mary Elmira Godfrey, must be construed in its technical sense to prevent repugnancy and to carry out the manifest intention of the testator to dispose of 'his entire estate, vesting a life estate in his wife and the *remainder* in fee simple in Mary Elmira Godfrey. The will, in other words, should be construed in legal effect as if it read, ''I give, devise and bequeath to my wife, Artemus F. Gillis, for her life, my entire estate, except $1,000, and, at her death, the remainder to Mary Elmira Godfrey.'' If such were the plain language of the will, it would clearly mean that the testator vested a life estate in his wife, Artemus F. Gillis, and in Mary Elmira Godfrey at the same time a vested estate in the remainder, which bequests and devises disposed of his entire estate. Under this construction of the will, the life estate ended with the death of Mrs. Gillis, at which time Mary Elmira Godfrey took the fee as remainderman. As is said in *Bell* v. *Gentry, supra,* ''we are led to the conclusion announced, not only by a consideration of the language set out above, but by the settled rule of construction, that the law favors the vesting of estates as early as possible, and we think

the construction given this will effectuates the intent of the testator.'' The undisputed testimony shows that Mrs. Herring is still living. She is the only party in interest, and is not made a party to this action. The conclusion we have reached makes it unnecessary and improper to discuss, much less to decide, the other questions presented in the interesting briefs of counsel. The decree of the trial court is in all things correct, and it is affirmed.