FINE *v.* McGOWAN.

4-2891

Opinion delivered February 27, 1933.

*Rains & Rains,* for appellant.
*Starbird & Starbird,* for appellee.

BUTLER, J. This case involves the construction of the will of Nannie C. Carter, who was the owner of a farm containing 82 acres of land, an additional 80-acre tract, and certain personal property and life insurance. Mrs. Carter died, leaving surviving her husband, John Carter, and four daughters, Mrs. Daisy M. Fine (then Malone), the appellant, Dora E. Patton, Leila Fine and Mary J. McGowan, the appellee. After providing for the payment of her debts and funeral expenses and directing that her executor convert into money all her personal property and collect the amount of her insurance, and devising to her granddaughter eighty acres of land not included in her farm, and certain other specific bequests, she devised to her husband, for his life or until his remarriage, the use, rents and profits of her farm, provided that on his death or remarriage the 82-acre farm be divided into four portions of 20½ acres each in a certain specific manner. Three of these parcels she devised in fee simple on the termination of the particular estate devised to her husband unto Mary McGowan, Leila Fine and Dora E. Patton. The particular estate of the husband was devised by item 5 of the will, which is as follows:

"I give and bequeath unto my beloved husband, John Carter, one bed, ten quilts, two pillows, 1 dresser, 1 commode, 2 rocking chairs, and such kitchen and dining furniture and ware as he may choose out of such articles as

I may leave at my death. I also give and devise unto my said husband, until his death or remarriage, the use, rents and profits of my farm in sections seven and eight in township nine of range twenty-nine west, in Crawford County, Arkansas, containing eighty-two acres, more or less.''

The remaining 20½ acres was disposed of by item 8 of the will, which is as follows:

''I give, devise and bequeath unto my said daughter, Daisy M. Malone, the use, rents and profits of the residue and remainder in same after the death or remarriage of my said husband, John Carter, of the following described land in Crawford County, Arkansas, to-wit: The west twenty and one-half acres of the east forty-one acres of my farm in sections seven and eight, in township nine of range twenty-nine west, and I give and devise to my said executor, in trust for use of said Daisy M. Malone, and direct and empower him, my said executor, to invest one-fourth of all the rest, residue and remainder of my estate, after the specific legacies hereinbefore provided for, including therein the money arising from my insurance policies, in river-bottom land in this county as near as may be to said land above set apart for her use, and take title thereto of a life estate in said Daisy M. Malone, re-mainder over to the heirs of her body, if any there be, and, if not, then remainder over to her three sisters, Mary J. McGowan, Leila V. Fine and Dora E. Patton, in equal shares.''

It was this item of the will that the trial court was called upon by the appellant to construe, it being appel-lant's contention there, and she here insists that item 5 of the will created a life estate in John Carter and at his death the fee would vest in the appellant who was at the time of the execution of the will, Daisy M. Malone. Be-fore the beginning of this litigation, John Carter, the husband of the testatrix, had died.

In support of the contention of appellant, counsel cite and rely upon a great number of our cases and par-ticularly stress the cases of *Hardage* v. *Stroope*, 58 Ark.

302, 24 S. W. 490; *Bell* v. *Gentry,* 141 Ark. 484, 218 S. W. 194; and *Pletner* v. *Southern Lbr. Co.,* 173 Ark. 277, 292 S. W. 370. We are of the opinion that the appellant mis-conceives the import of items 5 and 8 of the will and the effect of our decisions which correctly apply well-known principles of law to the construction of the particular lan-guage of the instruments under consideration. In *Har-dage* v. *Stroope, supra,* which is a leading case, the instru-ment was a deed, and the particular part construed was the habendum clause, which is as follows: "To have and to hold the said lands unto the said Tennessee M. Carroll for and during her natural life, then to the heirs of her body in fee simple; and if, at her death there are no heirs of her body to take the said land, then in that case to be divided and distributed according to the laws for descent and distribution in this State."

In *Bell* v. *Gentry, supra,* there was the following de-vise: "I devise to my said executrix all the residue of my real estate as long as she shall remain unmarried and my widow, with remainder thereof on her decease or mar-riage to my said children and their bodily heirs in the following manner: (naming the children.)"

In *Pletner* v. *Southern Lbr. Co., supra,* the devise construed is as follows: "I wish my wife, Artemus F. Gillis, to have the benefit of the homestead, * * * with the remainder of my estate to the said Mary Elmira Godfrey and her bodily heirs, and should the said Mary Elmira Godfrey die leaving no bodily heirs, I wish that portion of my estate to be turned over to my nephew, John M. Gillis, and his children, of Perry County, Alabama, Mar-ion, P. O."

In the first-named case the language of the habendum clause was held to convey to Mrs. Carroll an estate in fee by reason of the application of the rule in Shelley's case. The court there said: "The intention of the deed in question was to convey the land in controversy to Mrs. Carroll for life, then to her lineal heirs, and, in default thereof, to her collateral heirs; in other words, to Mrs. Carroll for life, and, after her decease, to her heirs. The

intention that the heirs were to take only in the capacity of heirs is manifest. The deed comes within the rule in Shelley's case. The estate of inheritance vested in Mrs. Carroll, and she became seized of the land in fee simple.''

As a reason for this holding, the court said: ''It is obvious that the deed to Mrs. Carroll created in her no estate *in tail*. Her grantor reserved no estate or interest, nor granted any remainder, after a certain line of heirs shall become extinct, but conveyed the land to her to hold during her life, and then to the heirs of her body in fee simple. No remainder vested in her children.''

In *Bell* v. *Gentry, supra,* it was contended that the children of the testator at the termination of the widow's life estate took only a life estate with the remainder in fee to their children. In overruling this contention, the court properly held that the fee vested in the children, and said: ''The will created a remainder and provided when it should vest, and that was on the decease or remarriage of the widow.''

In *Pletner* v. *Southern Lbr. Co., supra,* the court, in disposing of the contention that Mrs. Godfrey held a life estate only under the devise, said: ''This court has often ruled that, where land is conveyed or devised to a person and the heirs of the body, children, or issue of such person, such conveyance or devise creates an estate *tail* in the grantee or devisee, which, under our statute (§ 1499, Crawford & Moses' Digest) becomes an estate for life only in the grantee or devisee and a fee simple absolute in the person to whom the estate *tail* would first pass, according to the course of the common law, by virtue of such devise, grant or conveyance. But this familiar doctrine cannot have application here, for the reason that the estate is not devised to Mrs. Mary Elmira Godfrey and her bodily heirs, creating a life estate in her and a fee simple estate in her bodily heirs under the statute *supra*. The life estate, as we have seen, was previously devised to Mrs. Artemus F. Gillis, and the remainder of the estate, after such life estate, was devised to Mary Elmira Godfrey and her bodily heirs. If the

testator had intended to vest only a life estate in Mrs. Mary Elmira Godfrey, to take effect immediately upon the death of Mrs. Gillis, he doubtless would have designated the estate to be thus cast on Mrs. Godfrey as a 'life estate' instead of as a 'remainder.' After he had carved out of the fee a life estate, and then vested the 'remainder' in Mrs. Godfrey, he evidently meant to devise to her what remained of the estate in fee simple, which was all of it. The fee took it all, and there was nothing left to devise. To construe the will so as to vest the life estate in Mrs. Gillis and a life estate also in Mrs. Elmira Godfrey would be to make these clauses of the will repugnant and inconsistent. This could not have been the intention of the testator, and such construction must therefore be avoided in order to effectuate his purpose. Therefore, construing all the provisions of the will, it occurs to us that the testator intended to vest in Mrs. Gillis a life estate at his death, and at that time to vest in Mrs. Godfrey an estate in remainder (using the latter term in its technical sense) and, by so doing, to dispose of his entire estate."

Item 8 of the will under construction in the instant case, correctly interpreted, manifests a single intention, and the concluding language, "remainder over to the heirs of her body, if any there be, and if not, the remainder over to her three sisters, (naming them) in equal shares," is referable to the 20½ acres carved out of the farm as well as to the real estate purchased by the executor out of the proceeds of the personal property. Hence its effect, with the direction as to the investment of the proceeds of the personal property in land eliminated, would be as if it read as follows: "I give, devise and bequeath unto my said daughter, Daisy M. Malone, the use, rents and profits of the residue and remainder in same after the death or remarriage of my said husband, John C. Carter, of the following described lands in Crawford County, Arkansas, to-wit: The west twenty and one-half acres of the east 41 acres of my farm in sections 7 and 8, township 9 north, range 29 west, remainder over to

the heirs of her body, if any there be, and, if not, the remainder over to her three sisters, Mary J. McGowan, Leila V. Fine and Dora E. Patton, in equal shares.''

Thus interpreted, the language of item 8 of the will is unlike to the language of the habendum clause in the case of *Hardage* v. *Stroope* and of the devises in the cases of *Bell* v. *Gentry* and *Pletner* v. *Southern Lumber Co., supra.*

After the determination of the particular estate in John Carter, if the will had devised the remainder to Daisy M. Malone and to the heirs of her body, etc., then the devise would have been similar in nature to the conveyance and devises above set out, the cases relied upon would be in point, and the principles upon which they were determined applicable here. But such is not the case. The testatrix here carved two particular estates out of the fee, one to John Carter, her husband, and at its termination, to Daisy M. Malone, her daughter, ''with remainder over to the heirs of her body, etc.'' Under the holding in the cases cited, this would not create an estate in fee in Daisy M. Malone, but in the heirs of her body, if any, and if not, in her three sisters.

In construing wills the cardinal doctrine is that, when the intention of the testator has been ascertained by consideration and comparison of the will in its entirety, such intention must prevail and be enforced unless contrary to some well-recognized rule of law. Technical words used in a will are generally construed according to their technical meaning. It is apparent that for some reason, best known to the testatrix, she was unwilling to devise the fee in the parcel of land to the appellant. This is to be inferred by the express language used and by the fact that, with the same particularity and in no uncertain terms, she conveyed the fee in the other three parcels to her other three daughters. She did not convey to the appellant to hold during her lifetime and then to the heirs of her body in fee simple as was done in the Stroope case, but, in plain language, provided that at appellant's death the remainder should vest in her heirs, if any, and if not,

in her three sisters, the other daughters of the testatrix. The testatrix used the language to create a life estate in the appellant, as the court suggested the testator might have done in the Pletner case if a life estate had been intended. It must be assumed that the testatrix used the term "remainder" in its technical sense and to mean that, at the termination of the particular estate in Daisy M. Malone, it should vest in the remaindermen in fee. "Whether vested or contingent, it is essential to a remainder * * * and is an imperative rule of law, that it should take effect immediately on the termination of the prior estate, the particular estate and remainder together forming one continuous ownership. * * * From the doctrine above stated, that the particular estate and the remainder form together, when united, but one estate of the extent or duration of the two, it follows that, while ever so many remainders in succession may be carved out of a fee simple if each is less than a fee, no remainder can be limited after a fee; for, when a fee has once been created, there can be nothing left by way of remainder to give away." 2 Washburn on Real Property, p. 504.

The particular estate and the remainder were never united in the appellant, and therefore the fee did not vest in her, but remained dormant during her life tenancy to become vested at her death in the remaindermen. We are of the opinion that there is nothing in the cases cited by appellant in conflict with the conclusion we have reached, but, on the contrary, that they support our view. It follows that the decree of the chancellor is correct, and it is therefore affirmed.

McHaney, J., dissents.