ADAMS *v.* EAGLE.

4-4679

Opinion delivered June 7, 1937.

*Ralph Ray,* for appellant.
*Chrisp & Nixon,* for appellee.

BUTLER, J. In pursuance to a contract by which appellee agreed to convey by a good and merchantable title in fee simple a certain tract of land in Lonoke county, Arkansas, to the appellant, appellee executed his warranty deed for a consideration of $2,000 in cash and five promissory notes of $900 each, these notes representing the balance of the purchase price. To secure the prompt payment of the notes, appellant executed and delivered to the appellee a mortgage covering the lands purchased.

This suit was instituted by the appellant to cancel the sale and the notes executed and he prayed for judgment against the appellee for $2,000, the amount of cash paid, and interest, and for an order, pending the suit, to restrain the appellee from assigning or pledging the notes. This suit was predicated upon the contention that the appellee was not the owner of a fee simple title in the property, but of a life estate only. The answer admitted the allegations of the complaint except the allegation that the appellee was not the owner of the fee simple title, and pleaded affirmatively that at the time of the sale he was the owner of such title, and by his deed conveyed the same to the appellant.

The case was tried before the lower court upon an agreed statement of facts and resulted in a finding that appellee was vested with a fee simple title to the lands in controversy at the time of the conveyance, and a decree was accordingly entered dismissing appellant's complaint for want of equity.

The facts are that W. H. Eagle, in his lifetime, was the owner of the lands involved together with other lands and personal property. He died leaving a widow who is now, and was deceased for some time prior to the transaction out of which this suit arises. W. H. Eagle left a will disposing of his property, and upon its construction the question presented must be settled. After making certain specific bequests of personal property, the testator devised certain lands to his daughter, "Bessie Eagle and to her bodily heirs," and in like manner he made five other specific devises to other of his children, naming them, and devising to each of them par-

ticular parcels of land, these devises being to each by name and "unto her (his) bodily heirs."

The twelfth paragraph of the will is as follows: "I hereby set apart for my beloved wife, Ada M. Eagle, for her use and benefit as long as she lives, all my lands in sections twenty-seven (27), twenty-eight (28), thirty-three (33), thirty-four (34), and thirty-five (35), in township two south, range nine west, in all twenty-one hundred and twenty acres, commonly known as the Gray Place in Lonoke county. Taxes on said lands and the necessary repairs are to be paid from the profits from the farm." (The lands involved in this action are a part of the foregoing).

Section 16 of the will is as follows: "When my dear wife dies, the plantation set apart for her during her life known as the Gray Place, including all my lands in sections twenty-seven, twenty-eight, thirty-three, thirty-four and thirty-five, in township two south, range nine west, in all twenty-one hundred and twenty acres shall be equally divided in value between all my children * * * (here follows the names of all the children including that of appellee, Franch Eagle), and shall be conveyed to them and to their bodily heirs by order of the probate court of Lonoke county. If any of my said twelve children should die without issue, all the lands bequeathed to them in this will, including the bequest of the Gray Place, and also the money any of them may be possessed of who may die before reaching their majority, shall be equally shared in by their surviving brothers and sisters."

To sustain the conclusion reached by the trial court, appellee cites, and relies upon the cases of *Pletner* v. *So. Lbr. Co.*, 173 Ark. 277, 292 S. W. 370, and *Bowlin* v. *Vinsant*, 186 Ark. 740, 55 S. W. (2d) 927. In the first case the material part of the will is as follows: "I wish my wife, Artemus F. Gillis, to have the benefit of the homestead, together with all the stock and household goods, during her life, and, if that is not sufficient, out of the remainder of my estate for own special benefit. And the one thousand dollars in gold now in the hands of S. W. Godfrey to go to Mary Elmira Godfrey, with the

remainder of my estate to the said Mary Elmira Godfrey and her bodily heirs, and should the said Mary Elmira Godfrey die leaving no bodily heirs, I wish that portion of my estate to be turned over to my nephew, John M. Gillis, and his children, of Perry county, Alabama, Marion P. O.''

In the Bowlin case, *supra,* the pertinent part of the will under consideration is as follows: ''* * * I give and devise the said dwelling house and premises devised unto my wife during her life, and at her death, or should my said wife not survive me, unto my daughter, Gertrude Vinsant, and the heirs of her body.'' The question was whether or not Gertrude Vinsant (she having survived her mother) took on the death of her mother a life estate or title in fee simple. Other provisions of the will are not mentioned in the opinion. The court held that on the death of the mother the title vested in fee simple in Gertrude Vinsant and, in support of this conclusion, cited the cases of *Pletner* v. *So. Lbr. Co., supra,* and *Bell* v. *Gentry,* 141 Ark. 484, 218 S. W. 194. The Pletner case turned upon the construction of the word ''remainder'' as used in the clause containing the devise to Mary Elmira Godfrey which the court said must be construed in its technical sense to carry out the manifest intention of the testator to dispose of his entire estate, vesting a life estate in his wife and the ''remainder'' in fee simple to Mary Elmira Godfrey. In that connection the court took notice of the well settled definition of the word ''remainder'' as ''an estate or interest in lands or tenements to take effect in possession or enjoinment immediately upon the termination of a prior estate, which is created at the same time and by the same act or instrument, and upon which such first mentioned estate is made to depend.'' In that case the court, also, said: ''This court has often ruled that, where land is conveyed, or devised, to a person and the heirs of the body, children, or issue of such person, such conveyance or devise creates an estate tail in the grantee or devisee, which, under our statute (§ 1499, Crawford & Moses' Digest) becomes an estate for life only in the grantee or devisee and a fee simple absolute in the person to whom the

estate tail would first pass, according to the course of the common law, by virtue of such devise, grant or conveyance. *Horsley* v. *Hilburn,* 44 Ark. 458; *Wilmans* v. *Robinson,* 67 Ark. 517, 55 S. W. 950; *Wheelock* v. *Simons,* 75 Ark. 19, 86 S. W. 830; *McDill* v. *Meyer,* 94 Ark. 615, 128 S. W. 364; *Watson* v. *Wolff-Goldman Realty Co.,* 95 Ark. 18, 128 S. W. 581, Ann. Cas. 1912A, 540; *Rogers* v. *Ogburn,* 116 Ark. 233, 172 S. W. 867; *Georgia St. Savings Ass'n* v. *Dearing,* 128 Ark. 149, 193 S. W. 512; *Gray* v. *McGuire,* 140 Ark. 109, 215 S. W. 693; *Bell* v. *Gentry,* 141 Ark. 484, 218 S. W. 194; *Eversmeyer* v. *McCollum,* 171 Ark. 117, 283 S. W. 379.

"But this familiar doctrine cannot have application here, for the reason that the estate is not devised to Mrs. Mary Elmira Godfrey and her bodily heirs, creating a life estate in her and a fee simple estate in her bodily heirs under the statute, *supra*. The life estate, as we have seen, was previously devised to Mrs. Artemus F. Gillis, and the remainder of the estate, after such life estate, was devised to Mary Elmira Godfrey and her bodily heirs."

In *Bell* v. *Gentry, supra,* the clause of the will considered is as follows: "I devise to my said executrix all the residue of my real estate as long as she shall remain unmarried and my widow with remainder thereof on her decease or marriage to my said children and their bodily heirs in the following manner:"

The court, in holding that the estate created in the children was one in fee, said: "The will created a remainder and provided when it should vest, and that was on the decease or remarriage of the widow. In defining the heirs who should then take the testator employed words of procreation so that only those heirs special, rather than the heirs general, took under the will; but the rights of these heirs became fixed when the remainder was cast, which event proved to be the death of the widow as she died without having remarried. *Harrington* v. *Cooper,* 126 Ark. 53, 189 S. W. 667. At the death of the widow, when the remainder was cast, the son, Dennis, and the daughter, M. F. Smith, survived her and they, therefore, took the fee as remaindermen.

Had they, or either of them, died in the lifetime of their mother, their bodily heirs would have taken the fee; and these bodily heirs would have taken as devisees under the will (and not by descent from Dennis or M. F.), they being the heirs special, or bodily heirs, *in esse* when the event happened upon which the remainder was to vest, that is the death of the testator's widow.

"We are led to the conclusion announced, not only by a consideration of the language set out above, but by the settled rule of construction that the law favors the vesting of estates as early as possible, and we think the construction given this will effectuates the intent of the testator."

The cases cited announce an exception to the general rule that a conveyance by deed or devise to a grantee and his bodily heirs "creates a life estate in the grantee with remainder in fee simple to the children who survive him, and the issue of such as die during his life *per stirpes*." See cases cited in *Pletner* v. *So. Lbr. Co.*, *supra*. The Pletner and Bowlin cases, *supra*, seem to be of controlling effect in the case at bar. We are not called upon to determine, and pass without deciding, the quantity of the estate conveyed by the specific devises. It is the residuary estate, cast upon appellee, after the termination of the particular estate which is involved, and as to it we perceive no substantial difference in the language of the will, and that of the wills in the cases relied upon by appellee. It is true the technical term "remainder" is not used, but a life estate is clearly created in the widow and necessarily a contingent remainder in the children and their bodily heirs, so that, upon the death of the life tenant, the children, if living, would take the remainder in fee, or, if any children were deceased, his or her bodily heirs would take under the will and not by inheritance from their ancestor, as "special or bodily heirs *in esse* when the event happened upon which the remainder was to vest, that is, the death of the testator's widow." This being true, the trial court was correct, and its decree is, therefore, affirmed.