Cox *v.* Danehower.

4-8218                                          202 S. W. 2d 200

Opinion delivered May 19, 1947.

*Norton & Norton,* for appellant.

*Harrelson, Harrelson & Cannon,* for appellee.

MINOR W. MILLWEE, Justice. John Cox, Sr., died testate in St. Francis county, Arkansas, and his will was regularly admitted to probate on October 16, 1911. The testator made provision for each of his six children, and the tract of land involved in this suit was devised to his son, Joseph Cox, as follows: "I give and devise to my son, Joseph Cox, the following land lying and being in the county of St. Francis and State of Arkansas, to-wit: The southwest quarter of the northeast quarter (SW¼ of NE¼) of section seven (7) in township four north (4N) and range three east (3E), to have and to hold unto the said Joe Cox for and during his natural life and at his death to the heirs of his body, but should said Joseph Cox die without heirs of his body then and in that event the land herein willed to him for his natural life shall be and become the property of brothers and sisters and the heirs of their bodies."

Joseph Cox was never married and held possession of the tract under the above devise until his death, without issue, on September 10, 1946. The six children of the testator, John Cox, Sr., survived him. Three of these children survived their brother, Joseph Cox, and are plaintiffs in this suit. The other two children of John

Cox, Sr., were Thomas Cox and John Cox, Jr., who died in the years 1929 and 1940, respectively. Thomas Cox left, surviving him, eight children and John Cox, Jr., left, surviving him, five children. The surviving children of Thomas Cox and John Cox, Jr., are now living and claim an interest in the land in controversy. Plaintiffs, the three living children of John Cox, Sr., also have children who are plaintiffs' potential bodily heirs.

On January 23, 1947, plaintiffs filed this suit alleging that defendant, James E. Danehower, contracted to buy said 40 acre tract for $1,600 payable upon delivery of a deed conveying good title; that plaintiffs tendered such deed, but defendant had refused to receive the deed and pay the purchase price. Plaintiffs tendered their deed into court and prayed for specific performance of the contract.

In his answer defendant admitted all allegations of the complaint except the allegation that plaintiffs owned the land and that their deed would convey good title under the contract. The answer alleged that the surviving children and bodily heirs of Thomas Cox and John Cox, Jr., were claiming an interest in the land; and that they had also agreed to convey the land to defendant jointly with plaintiffs for the agreed price of $1,600, which defendant was ready and willing to pay for clear title to the land. Defendant asked that he be placed in lawful possession of the land upon payment of $1,600 into the registry of the court; that the complaint be dismissed for want of equity, or in the alternative, that all claimants of the land be required to assert their respective rights and interests therein.

The children and bodily heirs of Thomas Cox and John Cox, Jr., adopted the answer of defendant and filed a cross complaint against plaintiffs and defendant alleging they were able and willing to join plaintiffs in a deed to defendant, but that plaintiffs refused to acknowledge their interest in the land, and that defendant refused to accept a deed or pay the purchase price unless a deed be executed by all parties. The cross complainants prayed

that their interest in the land be determined, and that defendant and plaintiffs be required to perform the contract of sale.

Plaintiffs filed a demurrer alleging that the answers and cross complaint did not state a defense to the complaint. The demurrer was overruled. Plaintiffs declined to either plead further or offer proof and their complaint was dismissed.

On consideration of the cross complaint and other pleadings, the Chancellor found that upon the death of Joseph Cox on September 10, 1946, the fee simple title to the land in controversy became vested, under the will, as follows: a one-fifth interest to each of the three plaintiffs, the surviving brother and sisters of Joseph Cox, deceased; a one-fifth interest to the eight bodily heirs of Thomas Cox, deceased, collectively and in equal shares; and a one-fifth interest to the five bodily heirs of John Cox, Jr., collectively and in equal shares. The court decreed specific performance of the contract. Plaintiffs and cross complainants were directed to convey the land to defendant who was ordered to make payment of the $1,600 purchase price according to the several interests declared. Plaintiffs and defendant have appealed.

At the outset we are confronted with the fact that an interpretation of only one item of a will is sought by the parties and the whole will is not before us. The entire will is not set forth in the pleadings and does not appear in the record. One of the cardinal rules in the construction of wills is that it is the court's duty to ascertain the intent of a testator, and in doing so such intent is not to be determined by one clause only, but must be gathered from a full consideration of the entire will. In the case at bar, however, the parties seem willing to assume that a consideration of the other portions of the will would not aid their respective contentions, and are content to rest their case upon the devise above quoted. Acting upon this assumption, we proceed to determine whether the language of this devise alone supports the conclusion reached by the Chancellor.

It is the contention of plaintiffs that the Chancellor erred in holding that they must share with the children, and bodily heirs of Thomas Cox and John Cox, Jr., on a *per stirpes* basis. Plaintiffs insist that they, being the only brothers and sisters of the life tenant, Joseph Cox, at the time of his death, are the sole beneficiaries of the devise over and take the title in fee. It is contended that the words "and the heirs of their bodies," immediately following the designation of brothers and sisters as a class, do not include the bodily heirs of brothers and sisters previously deceased. This question was decided against the contention of plaintiffs in the case of *Bell* v. *Gentry*, 141 Ark. 484, 218 S. W. 194, and we think that decision is controlling here. In that case the testator was survived by his widow, who was also his executrix, and by several children. The devise was to the widow "as long as she shall remain unmarried and my widow with remainder thereof on her decease or marriage to my said children and their bodily heirs." The widow died without having remarried and it was held that the children took the fee as remaindermen. It was there said: "The will created a remainder and provided when it should vest, and that was on the decease or remarriage of the widow. In defining the heirs who should then take, the testator employed words of procreation so that only those heirs special, rather than the heirs general, took under the will; but the rights of these heirs became fixed when the remainder was cast, which event proved to be the death of the widow, as she died without having remarried. *Harrington* v. *Cooper*, 126 Ark. 53, 189 S. W. 667.

"At the death of the widow, when the remainder was cast, the son, Dennis, and the daughter, M. F. Smith, survived her and they, therefore, took the fee as remaindermen. Had they, or either of them, died in the lifetime of their mother, their bodily heirs would have taken the fee; and these bodily heirs would have taken as devisees under the will (and not by descent from Dennis or M. F.), they being the heirs special, or bodily heirs, *in esse* when the event happened upon which the remainder was to vest, that is the death of the testator's widow."

The effect of the devise under consideration was to create contingent remainders in the alternative following the life estate of Joseph Cox. In 33 Am. Jur., Life Estates, Remainders, etc., § 85, it is said: "More than one estate in remainder may be limited after a single particular estate if the limitation is in the alternative so that one may take effect if the other does not." See, also, Simes, Law of Future Interests, vol. I, §§ 78 and 79. The first alternative, *i. e.*, to the heirs of Joseph Cox's body, has failed, and the second alternative, to the brothers and sisters of Joseph Cox and the heirs of their bodies, vested upon the death of the life tenant, unmarried and without issue. At the time of the testator's death, the five brothers and sisters of Joseph Cox were living. Under the authority of *Bell* v. *Gentry, supra,* the bodily heirs of the deceased brothers of Joseph Cox take the share of their respective fathers *per stirpes,* as held by the Chancellor.

The next question for determination is whether plaintiffs and cross complainants take only a life estate followed by a fee in their bodily heirs under § 1799 of Pope's Digest, or a fee simple estate. In *Pletner* v. *Southern Lumber Co.,* 173 Ark. 277, 292 S. W. 370, John C. Gillis devised a homestead to his wife, Artemus F. Gillis, for life with remainder to Mary Elmira Godfrey and her bodily heirs. It was held that the devise created a fee simple estate in Mary Elmira Godfrey after the wife's death and that § 1799 of Pope's Digest relating to *fees tail* was inapplicable. The court said: "This court has often ruled that, where land is conveyed, or devised, to a person and the heirs of the body, children, or issue of such person, such conveyance or devise creates an estate tail in the grantee or devisee, which under out statute (§ 1499, C. & M. Digest) becomes an estate for life only in the grantee or devisee and a fee simple absolute in the person to whom the estate tail would first pass, according to the course of the common law, by virtue of such devise, grant or conveyance. . . .

"But this familiar doctrine cannot have application here, for the reason that the estate is not devised to Mrs.

Mary Elmira Godfrey and her bodily heirs, creating a life estate in her and a fee simple estate in her bodily heirs under the statute, *supra*. The life estate, as we have seen, was prviously devised to Mrs. Artemus F. Gillis, and the *remainder* of the estate after such life estate, was devised to Mary Elmira Godfrey and her bodily heirs.'' The court held that Mary Elmira Godfrey took the fee, and not a life estate, saying: ''To construe the will so as to vest the life estate in Mrs. Gillis and a life estate also in Mrs. Elmira Godfrey would be to make these clauses of the will repugnant and inconsistent. This could not have been the intention of the testator, and such construction must therefore be avoided in order to effectuate his purpose.''

The statute (§ 1799, Pope's Digest) was likewise held inapplicable in the case of *Bowlin* v. *Vinsant,* 186 Ark. 740, 55 S. W. 2d 927, under a devise by the testator to ''my wife during her life, at her death, or should my said wife not survive me, unto my daughter, Gertrude Vinsant, and unto the heirs of her body.'' The wife survived her husband and the daughter (appellee) survived her mother. The court in construing the will said: ''While the testator did not use the word 'remainder' in this connection as was the case of *Pletner* v. *Southern Lumber Co.,* 173 Ark. 277, 292 S. W. 370, it was in fact the remainder conveyed. . . . We think the real intention of the testator was that, if appellee were living at the time of his wife's death, she should take the fee, but, if she were not living then, the heirs of her body would take the fee.''

The holding in the Pletner and Bowlin cases, *supra,* was reaffirmed and followed in *Adams* v. *Eagle,* 194 Ark. 171, 106 S. W. 2d 192. Under the rule of construction followed in these cases, plaintiffs, the surviving brother and sisters of Joseph Cox, and cross complainants, children of the two deceased brothers of Joseph Cox, took a fee simple rather than a fee tail estate upon the death of the life tenant. This being true, they can now convey a clear title to the defendant purchaser, and the trial court correctly so held.

The decree for specific performance is accordingly affirmed.