Eubanks *v.* McDonald.

5-742                                                     283 S. W. 2d 166

Opinion delivered October 31, 1955.

*John W. Murphy* and *Hubert L. Burch,* for appellant.

*Daily & Woods,* for appellee.

George Rose Smith, J.   This is a suit brought by the appellee to quiet her title to a small tract of land in Washington County. The case turns upon the construction of this language in the will of W. G. Taylor, who is the parties' common source of title: "I will and bequeath to my beloved wife, Ida Taylor, all the rest and residue of my estate, both real and personal, to have and enjoy during her lifetime, and at her death I will and bequeath that all my property go to and become the absolute property of my adopted daughter, Dorothy Taylor, now Dorothy Wilson, of Fort Smith, Arkansas, and the children of her body born, to have and enjoy forever."

At Taylor's death in 1934 Dorothy Wilson, who later became Dorothy Eubanks, was the mother of three children. The testator's widow, Ida Taylor, died some years after her husband's death, and thereafter Mrs. Eubanks and her three children conveyed their interest in the property to the appellee. In 1949 there was born to Mrs. Eubanks a fourth child, the appellant in this case.

The trial court construed Taylor's will as being in substance a devise to Ida Taylor for life with remainder to Dorothy Eubanks and her bodily heirs. Upon this premise the chancellor held that Mrs. Eubanks, who is still living, received only a life estate under Taylor's will and that the appellant is a remainderman having an undivided future interest in the land. On direct appeal it is argued that Taylor's devise was simply to Dorothy Eubanks and her children and that the appellant holds a present possessory interest as a tenant in common with the appellee. On cross-appeal the appellee contends that the appellant has no estate whatever in the property.

The first step is to determine the meaning of the devise to Dorothy Eubanks "and the children of her body born." We agree with the chancellor's view that this question is controlled by the decision in *Dempsey* v. *Davis,* 98 Ark. 570, 136 S. W. 975, where the conveyance was to the grantors' daughter "and her children, the natural offspring of her body." It was held that the quoted words are synonymous with "bodily heirs." The phrases used in the two cases are so similar in fundamental meaning that to draw a somewhat artificial distinction between the two would only create needless uncertainty for the future.

Thus we have what amounts to a devise to Ida Taylor for life and at her death to Dorothy Eubanks and her bodily heirs. It is settled by five decisions of this court that the effect of this language was to vest the fee simple in Dorothy Eubanks upon the death of Ida Taylor. *Bell* v. *Gentry,* 141 Ark. 484, 218 S. W. 194; *Pletner* v. *Southern Lbr. Co.,* 173 Ark. 277, 292 S. W. 370; *Bowlin* v. *Vinsant,* 186 Ark. 740, 55 S. W. 2d 927; *Adams* v. *Eagle,* 194

Ark. 171, 106 S. W. 2d 192; *Cox* v. *Danehower,* 211 Ark. 696, 202 S. W. 2d 200. By the doctrine of these cases the appellant has no interest in the land now in dispute, since his mother received the fee and later conveyed it to the appellee.

The chancellor recognized the force of the precedents cited; but, aware that the case was to be appealed in any event, he explained in detail his reasons for thinking that the earlier decisions should be overruled. Other learned writers have also questioned the technical soundness of the established rule: Sadler, The Construction of the Arkansas Fee-Tail Statute, 4 Ark. L. S. Bull. 29; Meriwether, A Survey of Recent Arkansas Real Property Cases, 3 Ark. L. Rev. 62, 66; Core, Transmissibility of Certain Contingent Future Interests, 5 Ark. L. Rev. 111, 122.

We shall not restate the various persuasive arguments for and against the rule adopted in *Bell* v. *Gentry,* for the doctrine of that case and those that have followed it has become a rule of property. To repudiate the rule by judicial decision would have the effect of invalidating titles that were acquired in reliance upon the rule in question. If a change in the law is really desirable it should be brought about by legislation, which operates with prospective effect only and does not upset titles already vested.

Affirmed on direct appeal, reversed on cross-appeal.

Mr. Justice WARD dissents.

PAUL WARD, Associate Justice, dissenting. I believe I can make my point of dissent more readily understood by using a series of illustrations and by substituting letters for names.

1. In the case under consideration we have a devise by T [denoting testator] to L [denoting taker of life estate] and then another devise to F [denoting here the step-daughter, or first taker] and the "heirs of her body."

2.  Notes: (a) The quoted words are not the ones used in the will under consideration, but I agree with the majority that their meaning is the same.  (b) I have divided the will into two distinct and separate devises as follows: first, from T to L for life; second, from T to F and the heirs of her body.

3.  Thus we see that in the "second" devise we have a perfect example for the application of Ark. Stats. § 50-405.  Applying this statute we then have the will conveying (a) a life estate to L, (b) a life estate to F [beginning at the death of L, as provided in the will], and; (c) a fee in the children of F.

4.  It is perfectly legal and proper for T to convey a life estate to L and, at her death, a life estate to F. See *Henderson* v. *Richardson*, 213 Ark. 532, 211 S. W. 2d 436.

5.  I must concede that [for all practical purposes] the language in the will under consideration is exactly like the language in *Bowlin* v. *Vinsant,* 186 Ark. 740, 55 S. W. 2d 927, one of the cases relied on by the majority. I also must concede that the *Bowlin* case is contrary to the results I reached in paragraph 3 above.

My dissent then amounts to a plea that the *Bowlin* case be overruled [as of this date].  I believe there are good reasons for my view, as I shall now attempt to show.

6.  The *Bowlin* decision was based on the decisions in *Bell* v. *Gentry,* 121 Ark. 484, 218 S. W. 194, and *Pletner* v. *Southern Lumber Company,* 173 Ark. 277, 292 S. W. 370, also relied on by the majority.  But a careful reading of these two cases discloses a fundamental difference between them and the *Bowlin* case relative to the essential facts or language.

In the former two cases there was only *one devise* in the wills construed, and this was considered to be the pivotal point in the case.

It is hard for me to follow the logic employed in these cases, but I do see the basis upon which the result was obtained. This is the reasoning, in effect, there used: Ark. Stats. could not apply because then there would be a life estate in L [created by the will], and a life estate in F [created by the statute], both existing at the same time—an impossible situation.

It seems that in the *Bowlin* case the court just assumed that the same *impossible situation* existed. It is perfectly obvious, however, that no such *impossible situation* did exist in the *Bowlin* case and that it does not exist in the case under consideration, where the wills specifically provide that the second life estate [created by statute] shall not begin to run until the first life estate is extinguished.

Since I feel sure that this court would like to give effect to Ark. Stats. § 50-405 in applicable situations, and since the *Bowlin* case amounts to a revocation of that statute in certain applicable situations, it appears to me advisable to use this first opportunity to set the record straight, effective as of this date.

7. In addition to the two cases cited above the majority also rely on *Adams* v. *Eagle,* 194 Ark. 171, 106 S. W. 2d 192, and *Cox* v. *Danehower,* 211 Ark. 696, 202 S. W. 2d 200. I purposely refrained from discussing these two cases for the following reasons: In the *Adams* case apparently, though it is not clear, there was only one devise by the testator which puts it in the same classification with the *Pletner* case. If this be true then the *Pletner* case which was cited in the opinion was properly cited. In that event however the *Bowlin* case which was cited in the opinion was, I submit, improperly cited. In the *Cox* case somewhat the same situation appears. Apparently there were two devises under the will although this does not appear as clearly as it does in the case under consideration. If we assume this to be true then the *Pletner* case which is cited in the opinion is improperly cited, but the *Bowlin* case which was cited in

the opinion was properly cited causing the court to repeat the same error that has heretofore been pointed out in the *Bowlin* case and it should likewise be overruled as of this date.