## HOWELL v. HENRY.

5-2695 356 S. W. 2d 747

Opinion delivered May 7, 1962.

*Edwin E. Dunaway,* for appellant.

*Joe P. Melton* and *Chas. A. Walls, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. The only question presented in this litigation is the proper interpretation of the language in the last will and testament, including the codicil thereto, of W. H. Eagle, Sr. The will was admitted to probate on March 21, 1906.

Appellant, Ruby Eagle Howell, instituted an action in ejectment against appellee seeking to recover possession of 80 acres of land in Lonoke County. The complaint alleged that under the will of W. H. Eagle, Sr., W. H. Eagle, Jr., was given a life estate in the lands in question, with the remainder in fee to his bodily heirs. Mrs. Howell was the only child of W. H. Eagle,

Jr., who died September 15, 1959. She alleged that, as the only remainderman, she became entitled to possession of the lands upon the death of her father. According to a stipulation entered into between the parties, W. H. Eagle, Jr., and his wife, Elaine, deeded the lands to J. M. Gates on February 23, 1917, and following some subsequent mortgages and conveyances, appellee purchased the lands from the St. Louis Union Trust Company. Both parties waived trial by jury, and the cause was submitted to the court. After the filing of stipulations, exhibits, and the taking of testimony, the court held that appellant had no interest in the lands; that appellee owned said lands in fee simple, and was entitled to continued possession thereof. From the judgment so entered, Mrs. Howell brings this appeal.

The will of W. H. Eagle, Sr., executed on July 5, 1904, contained, *inter alia,* the following provisions:

"Second: I desire and will that my twelve children, hereinafter named, share equally in my Estate, including what I have already advanced to them and the amounts I may hereafter advance to them including also the bequests of this Will. * * *

Sixth: I will and bequeath to my son, W. H. Eagle and unto his bodily heirs the following described lands to-wit: (here describing lands)

Seventh: I will and bequeath to my son, Bryan Eagle and unto his bodily heirs the following lands to-wit: * * *" (here describing lands)

Including the two just mentioned, Eagle devised lands to six of his children, using the term "and unto his[1] bodily heirs" in each instance. The other six were left bequests of money. On January 16, 1906, Eagle executed a codicil to the will, containing the following provisions pertinent to this litigation.

"1st. In my said last will I gave and devised to my son W. H. Eagle certain lands which it was my intention to will and devise to my son Bryan Eagle, and

---

[1] Or "her bodily heirs", as the case might be.

gave and devised to my son Bryan Eagle certain lands which it was my intention to give and devise to my son W. H. Eagle, and one· of the purposes of this codicil is to correct the error above described. My sole purpose being that all of my children shall be equal in the enjoyment of my property and estate.

2nd. I now give and devise to my said son W. H. Eagle, the West half (W 1/2) of the Southeast Quarter (SE 1/4) of Section Five Township 1 North, Range 9 West, containing 80 acres which lands were in my said last will given to my son Bryan Eagle.

3rd. I give and devise to my said son Bryan Eagle the S 1/2 of the Northeast Quarter of Northwest Quarter of Section Five, Township 1 North Range 9 West, containing 20 acres, which lands were in my said Last Will given and devised to my said son, W. H. Eagle.

4th. In my said Last Will I estimated the value of the lands and other property given, bequeathed and devised, fixing the total value to be given to each child, and I wish it understood that it is not my intention, by this codicil to alter or change such valuation, but simply to correct an error or oversight for when the total valuations allotted to my said son W. H. Eagle and Bryan Eagle respectively were made, my calculations were based upon the theory that each was to have the lands assigned him in this codicil. I therefore will and direct that such total valuations stand, as fixed and provided in my said will.''

Appellant stoutly contends that the court erred in holding that an estate in fee simple was devised to W. H. Eagle, Jr., rather than holding the will created a life estate only in Mr. Eagle with the remainder in fee to her. It is argued that Mr. Eagle, Sr. made clear his intention that all children should equally enjoy the property and estate, and that the codicil was only intended to substitute one piece of land for another, which had been erroneously described in the will itself; that to hold otherwise would do violence to the intent of the testator. Appellant cites *Eagle* v. *Oldham,* 116 Ark. 565, 174 S. W. 1176, where it was stated:

"The first and great rule in the exposition of wills (to which all other rules must bend) is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law."

In *United States of America* v. *Moore,* 197 Ark. 664, 124 S. W. 2d 807, this court said:

"It is the well-settled general rule that a will and codicil are to be regarded as a single and entire instrument for the purpose of determining the testamentary intention and disposition of the testator, and both instruments together will be construed as if they had been executed at the time of the making of the codicil. They will not, however, be considered as a single instrument where a manifest intention requires otherwise. The construction of the provisions contained in a will and codicil may be different from that which would be given to the same provisions all embodied in a will. This is due to the fact that the mere making of a codicil gives rise to the inference of a change in intention, and such inference does not arise in the case of a will standing by itself. When a will and codicil are inconsistent in their provisions, the codicil, being the latest expression of the testator's desires, is to be given precedence."

It is certainly apparent that Mr. Eagle intended to make a change, else he would not have executed the codicil. It is further noted that in that instrument, in the first item, he states, "*One*[2] of the purposes of this codicil is to correct the error above described." It would appear therefore, that Mr. Eagle had more than one purpose in executing the codicil. Of course, we do not *know* the exact reason for the employment of language in the will itself, the legal effect of which created only a life estate, and the employment of language in the codicil, which devised an estate in fee simple. It could be that Mr. Eagle did not know the legal meaning of the words used in the will at the time it was prepared, and actually had intended to devise the land in fee; it could be that other property had been given to the other children during the approximate year and a half

---

[2] Emphasis supplied.

period between the execution of the two instruments, and Mr. Eagle was seeking to equalize the amount of property to each child. Item 2 of the will clearly implies that other advances would be made to the children in addition to property devised or bequeathed. In connection therewith, appellee states in his brief:

"The burden in any litigation of this nature is upon the moving party, in this instance, the burden was upon the appellant in the lower court to prove, that by giving in fee to W. H. Eagle, Jr., this tract of land, an inequality would be created among the children. If there was any allegation prior to the filing of the suit, the same was not expressed at any time by the Executors nor the heirs at the time of the distribution of this estate, according to the proof. In fact, there was no evidence introduced to bear this argument out or to support it, and there being no question as to the change in valuation as between a devise in fee and a devise of a life estate, it is clear that the codicil was for the purpose of equalizing rather than for the purpose alleged by the appellant."

It, of course, is possible that the language used in the codicil was a mistake on Mr. Eagle's part, but, to the contrary, it also could well be that he was thoroughly familiar with the legal effect of the words used, and intentionally made the change in the choice of language. At any rate, there being nothing in either instrument to indicate that Mr. Eagle did not understand the meaning of the words used, we must presume that he understood the full legal effect of the language employed. As stated in *Crittenden* v. *Lytle,* 221 Ark. 302, 253 S. W. 2d 361:

"Certainly there is nothing in the will which indicates Mrs. Wilson did not understand the meaning of the words she used, and we must therefore presume that she did. In the early case of *Moody* v. *Walker,* 3 Ark. 147, this Court said:

'When technical phrases or terms of art are used, it is fair to presume that the testator understood their

meaning, and that they expressed the intention of his will, according to their import and signification. When certain terms or words have by repeated adjudication received a precise, definite and legal construction, if the testator in making his will use such terms or similar expressions, they shall be construed according to their legal effect...' "

In *Park* v. *Holloman,* 210 Ark. 288, 195 S. W. 2d 546, we said:

"The function of a court in dealing with a will is purely judicial; and its sole duty and its only power in the premises is to construe and enforce the will, not to make for the testator another will which might appear to the court more equitable or more in accordance with what the court might believe to have been the testator's unexpressed intentions. 'The appellants are correct in the statement that the purpose of construction is to arrive at the intention of the testator; but that intention is not that which existed in the mind of the testator, but that which is expressed by the language of the will.' " There is no ambiguity in the language used in the codicil; there is no reason for supposing that Mr. Eagle did not mean just what he said. That being ture, it follows that W. H. Eagle, Sr., devised to his son, W. H. Eagle, Jr., the lands in question, in fee simple.

Affirmed.

WARD, J., dissents.

PAUL WARD, Associate Justice (Dissenting). It seems to me this is a case where the majority can't see the forest for the trees—the forest being the will and codicil as a whole and the trees being a few isolated words.

The cardinal rule for the construction of a will is to ascertain the intention of the testator, as announced in *Wooldridge* v. *Gilman,* 170 Ark. 163, 279 S. W. 20. A hurried investigation reveals that we have approved and followed this rule in fifteen other cases.

In this case we should consider the will and the codicil as one instrument for the purpose of trying to arrive at the testator's intention. *United States of America* v. *Moore,* 197 Ark. 664, 124 S. W. 2d 807.

The application of the above rules to the essential facts in this case is a simple matter, and it leads me to but one conclusion.

The testator, by his original will, gave a distinct parcel of land (described by metes and bounds) to each of six children In each instance the testator placed a value on each parcel of land (ranging from $13,200 to $14,000). In each instance he made it clear that the land was being devised to the son (or daughter) "and his bodily heirs". (This meant, of course, the child could not sell the land.) Also, the testator, in the will, stated he wanted his children to share *equally* in his estate.

Later the testator discovered that he had mistakenly switched lands in the case of "W. H." and "Bryan". It is clear to me that the *purpose* of the "codicil" was to correct the above error, and not to change the quality of the devised estate. Among other things, my conclusion is explained briefly by the following:

(a). This view is the only view that maintains equality among the children.

(b). In the codicil the testator gave as *one* of his purposes "to correct error above described". (The words "above described" refer to the mixup in descriptions only.)

(c). The above was *one* of his purposes in executing the codicil. The question arises: What was another purpose? Was it to change the title from a fee tail to a fee simple? The answer is found in the 5th paragraph of the codicil where it is explained that due to the death of his brother since the will was signed, he was appointing another personal representative.

(d). The first paragraph in the codicil begins with these words: "In my said last will I *gave* and *devised*

to my son..." No one doubts that by the above quoted words the testator was referring to his "bequeath to my son ... and unto his bodily heirs". If that be true why attach an entirely different meaning to the same words (give and devise) when used later in the same paragraph? I can see no reason.