LEWIS *v*. BOWLIN.

5-3234                                    377 S. W. 2d 608

Opinion delivered April 13, 1964.

*Mark E. Woolsey,* for appellant.

*Ralph W. Robinson* and *Theron Agee,* for appellee.

CARLETON HARRIS, Chief Justice. This litigation involves a further interpretation of certain provisions of the will of William Bowlin. Item Six of that will was construed in the case of *Bowlin* v. *Vinsant,* 186 Ark. 740, 55 S. W. 2d 927. Bowlin died testate in 1916. He was survived by his widow, Julia Bowlin, and five living children, *viz,* Noble Bowlin, Lizzie Lowery, Lillie Brownfield, Gertrude Vinsant, and John Bowlin; also, there were five grandchildren, the children of a daughter, Rebecca Clark, who predeceased her father. Appellees are the children of Paul Bowlin, deceased, Paul having been a son of John Bowlin, and accordingly a grandson of William Bowlin. In addition to Paul Bowlin, father of appellees, John Bowlin was survived by five other children, Marcus Bowlin, Othel Bowlin, Lillie Lewis, Maude Campbell and Virgie May Ray. Under Item Three of the will, Virgie May Ray and Lillie Bowlin

Lewis were bequeathed the sum of $10.00 each, and their names do not otherwise appear in the will.

In 1916, Marcus Bowlin, Othel Bowlin, Maude Campbell, and Paul Bowlin (father of appellees) conveyed, by quitclaim deed, to their sister, Lillie Lewis, the lands involved in this appeal. In January, 1960, Lillie Lewis died intestate, leaving as her sole and only heir at law, Carl Lewis, appellant herein. Lillie and appellant had been in possession of the lands from the time of the conveyance (1916) to Lillie from her brothers and sister.

In May, 1962, appellees filed a complaint, alleging that they were part owners of the lands in question,[1] and they sought their proportionate share of the rents for 1959, 1960 and 1961. After the overruling of a demurrer, an answer was filed wherein it was asserted that Carl Lewis was the owner of the lands by virtue of being the sole heir of Lillie Lewis, Lillie having obtained her title to the property by virtue of the quitclaim deed heretofore mentioned, and one of the grantors of that deed having been Paul Bowlin, father of appellees. The cause was tried by the court, sitting as a jury. After certain stipulations in open court, and the taking of oral testimony, the court held that under the provisions of the will of William Bowlin, appellees are the owners of 7/32 interest, or a 1/32 interest each, and judgment was entered for appellees in the sum of $122.40 each, or a total judgment of $856.80, together with interest from date, at the rate of 6% per annum. From the judgment so entered, appellant brings this appeal.

*Bowlin* v. *Vinsant, supra,* involved the construction of Item Six of the will of William Bowlin. The language at issue was as follows:

"I also further give and devise unto my said wife, Julia, for and during her natural life, the use, occupancy of my dwelling house and premises now occupied by us as a dwelling and home in Van Buren, Arkansas, with the lots and land enclosed and adjoining thereto, and at

[1] It was subsequently stipulated that Marcus Bowlin, Othel Bowlin, and Paul Bowlin are deceased.

her death or should my wife not survive me, I give and bequeath the said personal property herein set forth or so much as may be undisposed of by my said wife, not in any manner intending to limit my wife in the disposition of said personal property, unto my daughter Gertrude Vinsant, and I give and devise the said dwelling house and premises devised unto my wife during her life, at her death or should my said wife not survive me, unto my daughter, Gertrude Vinsant and unto the heirs of her body.''

This court held that this language created a life estate in the wife, Julia, but that the daughter, Gertrude Vinsant, took the fee. Cited as authority for the holding was the case of *Pletner* v. *Southern Lumber Company,* 173 Ark. 277, 292 S. W. 370. To the same effect was the holding in *Bell* v. *Gentry,* 141 Ark. 484, 218 S. W. 194.

In the instant litigation, a certain provision of Item Nine of the will is at issue. This provision reads as follows: ''I give and devise unto my grandchildren, children of John Bowlin, viz: Marcus L. Bowlin, Paul C. Bowlin, Othel Bowlin and Maude E. Campbell and unto the heirs of their bodies, the one seventh part or share of said real estate or the one twenty-eighth part or share each.''

The trial court, in effect, held that this language devised only a life estate to the named grandchildren of William Bowlin with the fee in ''the heirs of their bodies,'' some of these heirs being appellees herein. In other words, the dispute in this case relates to the interest acquired by Marcus L. Bowlin, Paul C. Bowlin, Othel Bowlin and Maude E. Campbell, grandchildren of William Bowlin. If the quoted language in Item Nine devised the fee to these grandchildren, then appellant should prevail, for his mother received a quitclaim deed from these parties in 1916. If, on the other hand, the language only created a life estate in these grandchildren, then appellees, children of Paul Bowlin, are entitled to the interest contended for. The trial court held with appellees, and we think, unquestionably, held cor-

rectly. This holding was in accord with a line of cases following *Horsley* v. *Hilburn,* 44 Ark. 458,[2] and is also in accord with our statute, Ark. Stat. Ann. § 50-405 (1947), which reads as follows:

"In cases when by common law any person may hereafter become seized in fee tail of any lands or tenements, by virtue of any devise, gift, grant or other conveyance, such person, instead of being or becoming seized thereof in fee tail, shall be adjudged to be and become seized thereof for his natural life only, and the remainder shall pass in fee simple absolute to the person to whom the estate tail would first pass according to the course of the common law by virtue of such devise, gift, grant or conveyance."

An interesting article, Branch, "The Effect of Stare Decisis Upon Fee Tail in Arkansas," is found in Volume 10, Arkansas Law Review (1955-56), Page 181.[3] The article quotes Richard R. Powell, at that time Professor of Law at Columbia University, and Reporter on Property for the American Law Institute as follows:

" 'Arkansas, by decision, has injected a peculiar distinction between limitations "to B and the heirs of his body" (which are construed to be governed by the stat-

[2] See *Bradley Lumber Co. of Ark.* v. *Burbridge,* 213 Ark. 165, 210 S. W. 2d 284, and cases cited therein.

[3] From the article: "In order to reduce these situations to a simple form, consider the following: 'To A for life with remainder to B and the heirs of her body.' This would certainly create a life estate in A, but there must be another estate in someone else in order to add up to fee simple absolute. There is, by the will, a devise of the remainder to B and the heirs of her body. At common law a devise or conveyance to a person and the heirs of that person's body created an estate in fee tail. This is a devise to a person and the heirs of that person's body. By statute in Arkansas this would create a life estate in B and an estate in fee simple absolute in the bodily heirs of B.

"The above situation is the one with which the court was faced in the *Pletner* case. The court said that it is a well-established rule that a conveyance or devise to a person and the heirs of the body of such person creates an estate tail in the grantee or devisee, which, by statute, becomes an estate for life in the grantee or devisee and a fee simple absolute in the person to whom the estate tail would first pass by common law, citing *Horsly* v. *Hilburn.* But the court said this doctrine could not be applied since the estate is not devised to B and her bodily heirs, creating a life estate in B and fee simple absolute in her bodily heirs, but the life estate is given to A and the remainder to B and her bodily heirs."

ute) and limitations to B for life, remainder to C and the heirs of his body." In the latter situation the statute is not applied, and if C is alive at B's death, C gets an estate in fee simple absolute, but if C is then dead, C's descendants get the estate in fee simple absolute.'"

Professor Powell then criticizes the distinction made by the court between the two types of devises, and, in fact, several learned writers have questioned the soundness of the rule established in the *Bell, Pletner* and *Bowlin* cases. In *Eubanks* v. *McDonald,* 225 Ark. 470, 283 S. W. 2d 166, this court pointed out that to repudiate the rule by judicial decision would result in the invalidation of titles that had been acquired in reliance upon the rule in question.

Appellant recognizes the distinction between the two lines of cases, but argues that the will should be construed from its "four corners" in determining the intention of the testator, and that under such construction, he is due to prevail. In *Eagle* v. *Oldham,* 116 Ark. 565, 174 S. W. 1176, we said, "The first and great rule in the exposition of wills (to which all other rules must bend) is that the intention of the testator expressed in his will shall prevail, *provided it be consistent with the rules of law.*"[4] The italicized phrase precludes any speculation as to the intentions of William Bowlin, for we have several times stated the legal effect of the language employed.

In *Crittenden* v. *Lytle,* 221 Ark. 302, 253 S. W. 2d 361, this court said:

"Certainly there is nothing in the will which indicates Mrs. Wilson did not understand the meaning of the words she used, and we must therefore presume that she did. In the early case of *Moody* v. *Walker,* 3 Ark. 147, this court said:

" 'When technical phrases or terms of art are used, it is fair to presume that the testator understood their meaning, and that they expressed the intention of his

---

[4] Emphasis supplied.

will, according to their import and signification. When certain terms or words have by repeated adjudication received a precise, definite and legal construction, if the testator in making his will use such terms or similar expressions, they shall be construed according to their legal effect . . .' ''

Likewise, in *Park* v. *Holloman*, 210 Ark. 288, 195 S. W. 2d 546, we said:

''The function of a court in dealing with a will is purely judicial; and its sole duty and its only power in the premises is to construe and enforce the will, not to make for the testator another will which might appear to the court more equitable or more in accordance with what the court might believe to have been the testator's unexpressed intentions. 'The appellants are correct in the statement that the purpose of construction is to arrive at the intention of the testator; but that intention is not that which existed in the mind of the testator, but that which is expressed by the language of the will.' ''

See also *Howell* v. *Henry*, 235 Ark. 1, 356 S. W. 2d 747.

Under our statute, heretofore quoted, and the numerous decisions of this court, a devise ''unto A and unto the heirs of his body'' would create a life estate in A and an estate in fee simple absolute in A's bodily heirs. Here, the pertinent clause in Item Nine of the will created only a life estate in Marcus L. Bowlin, Paul C. Bowlin, Othel Bowlin and Maude E. Campbell, and their heirs, including appellees, took the fee.

Affirmed.