## W. M. CREEKMORE *v.* EUNICE GREGORY, EXC'X AND EARNEST GREGORY

5-4433                                    423 S. W.2 d 548

Opinion delivered February 5, 1968

*Harold C. Rains Jr.,* for appellant.

*Lonnie Batchelor,* for appellees.

CARLETON HARRIS, Chief Justice. W. H. Creekmore died testate in April, 1913, and his will was admitted to probate. Creekmore was survived by his widow, N. J. Creekmore, and four sons, W. M. Creekmore, John W. Creekmore, Fred G. Creekmore, and C. C. Creekmore. Included in the will were the following provisions:

"I give to my woman N. J. Creekmore the NW/4 of the SE/4 of Sec. 31, 11, 29 during her life, at her death to go to and be the property of W. M. Creekmore if he should die without any heirs then one of the other boys to take the land and pay the other 2/3 of its value.[1]

---

[1] It is apparent that this sentence should be interpreted as though a semi-colon appeared after the name, "W. M. Creekmore."

I don't want it to go out of the family."

N. J. Creekmore died many years ago (date not shown in record), and in 1937 John W. Creekmore, Fred G. Creekmore and C. C. Creekmore, together with their wives, conveyed their interest in the land by quitclaim deed to W. M. Creekmore.[2]

W. M. Creekmore died testate on March 18, 1966, having been predeceased by C. C. and Fred. John W. Creekmore, father of appellant, J. M. Creekmore, died approximately three weeks after W. M. Creekmore, and it is agreed that presently there are no closer relatives than nephews and nieces. In his will, W. M. Creekmore devised the above mentioned property to a nephew, Earnest Gregory; J. M. Creekmore contends that W. M. Creekmore was not the owner of the lands devised to Gregory, and accordingly had no right to include this devise in his will. The trial court disagreed, and the sole question on this appeal is the proper construction of the clause in the will of 'W. H. Creekmore, heretofore quoted.

The trial court ruled correctly. In *Harrington* v. *Cooper*, 126 Ark. 53, 189 S. W. 667, the court was called upon to construe the following provision of the testator, George Wood:

"I give to my beloved wife, Mary Jane Wood, during her natural life and to our daughter, Georgia Anna Wood, that portion of the tract of land on which we reside, lying north and east of Jacks Creek containing about five hundred acres, including the dwelling and gin house and other improvements as a joint support for my wife and at the death of my wife I desire and intend that my daughter, Georgia Anna Wood, shall take in her own right the entire interest should she survive her mother and shall my said daughter, Georgia Anna Wood, die childless then in that case the whole shall revert to my estate and be equally divided between my other children

---

[2]There is no necessity to discuss the effect, if any, of the deeds.

or their descendants of the same, the children of such as may be dead taking the interest that the parent would be entitled to if living."

This court said:

"It seems clear that the defeasance relates to the time of the death of the mother of appellants. That is the time fixed for her remainder interest to take effect. The words 'die childless' mean without having had or without leaving a child. In this way and in no other can every clause of the will be harmonized and have force and effect. It is perfectly clear that the testator intended that his daughter, Georgia Anna, should take a fee simple when he used the words, 'shall take in her own right the entire interest,' and it is also clear that he intended the estate to vest when her mother died by using the words, 'should she survive her mother.' The last clause already quoted by using the words 'die childless,' etc., means that if Georgia Anna should die without having a child or leaving a child before her mother's death, that the whole shall revert to the testator's estate and be equally divided among the testator's other children. In short it meant that the remainder in fee should be vested in Georgia Anna at her mother's death and in case Georgia Anna should die without leaving a child before her mother's death the estate should revert to the testator's estate and be divided among his other children. This is in application of a rule that where an estate is devised to one for life, with remainder to another, with the further provision that, if the remainderman should die without having a child, then to a third person, the words 'die without having a child' are restricted to the death of the remainderman before the termination of the particular estate."[5]

---

[3]It is of interest to note the comment in Simes and Smith, *The Law of Future Interests*, § 540, pp. 529-31:

"The disposition 'to A and his heirs, but if A die without issue, then to B and his heirs' has been considered, and the two possible constructions have been indicated. Suppose, however, that a testator devises property 'to X for life, remainder to A and his

When we apply that holding to the instant litigation, the words, "without any heirs" (instead of "die childless"), are restricted to the death of W. M. Creekmore, the remainderman, *before the termination of the particular estate, i. e.,* the life estate of N. J. Creekmore. See *Lewis* v. *Bowlin,* 327 Ark. 947, 377 S. W. 2d 608, which explains the distinction between this rule and those cases that are governed by Ark. Stat. Ann. § 50-405 (1947).

Affirmed.

---

heirs, but if A die without issue (or children) remainder to B and his heirs.' Three constructions are now possible: First, that 'die without issue' means 'die without issue before the death of the testator;' second that 'die without issue' means 'die without issue before the death of X, the life tenant;' and third, that 'die without issue' means 'die without issue at any time.' The first two are fairly termed substitutional constructions; the third, obviously, is not. The Restatement, and the weight of authority adopt the second view where this situation is presented.

"In a jurisdiction which prefers the substitutional construction when there is no preceding life estate, it would seem likely that the same preference would be adopted in construing the limitation here under consideration. All of the reasons for preferring the substitutional construction are still applicable. The only question is whether the substitutional date is the death of the testator or the death of the life tenant. Some courts continue to apply the substitutional rule at the death of the testator. A greater number of courts, however, apply the substitutional rule at the death of the life tenant. The latter construction seems preferable, since it gives full weight to the preference for making interests absolute as early as possible and still reflects the normal wishes of a testator."

This jurisdiction, of course, follows the second view. *Harrington* v. *Cooper, supra,* is cited as an example of the substitutional rule at the death of the life tenant.